**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Linda Jean FREEMAN, aka Laurie Diecidue, Defendant-Appellant.**

**No. 74–3191.**

United States Court of Appeals, Ninth Circuit.

July 22, 1975.

Joseph A. Milchen (argued), San Diego, Cal., for defendant-appellant.

Herbert Hoffman, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

## OPINION

Before KOELSCH, CHOY and GOODWIN, Circuit Judges.

KOELSCH, Circuit Judge:

Linda Jean Freeman appeals from the judgment convicting her of "bail jumping" (18 U.S.C. § 3150) following a court trial. That charge was based upon her failure to appear in the district court on May 20, 1974—the time fixed for sentencing her on a narcotics conviction.

■ Freeman was represented by the same attorney in both the narcotics and bail jumping proceedings; her assignments all center on the government's calling of her attorney at the latter trial to give evidence on the issue of notice, *i. e.,* whether Freeman knew she had been ordered to appear for sentencing on the 20th of May.

The district court did not err in requiring counsel to testify. The evidence sought to be elicited from him was not of a confidential nature and hence was not protected by the attorney-client privilege. It simply related to whether he had advised his client of the court's order to appear. We think the Second Circuit aptly appraised the matter when it said:

"The relaying of this message is not in the nature of a confidential communication. [Citations omitted.] Defense counsel served merely as a conduit for transmission of a message. * * * Defendant's counsel had a duty to relay the instructions to his client in his capacity as an officer of the court, and this in no way was inconsistent with his obligation to his client."

*United States v. Hall,* 346 F.2d 875, 882 (2d Cir. 1965); *see also United States v. Woodruff,* 383 F.Supp. 696, 698 (E.D.Pa. 1974).

■ Nor are we persuaded of error by appellant's due process and effective assistance of counsel contentions. Merely requiring a defendant's lawyer to testify does not alone constitute a material interference with his function as an advocate or operate to deprive the accused of a fair trial. *Cohen v. United States,* 297 F.2d 760, 763 (9th Cir. 1962), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962); *Hall, supra,* at 882–883. Here the matter was treated with considerable circumspection. The government first proposed that the fact sought to be prov-

en be stipulated; when defense counsel rejected that method, the court appointed an associate counsel *pro tempore,* who stated objections to the several questions put the witness and enabled the latter to devote his attention to his temporary testimonial role.

■ However, we do agree with appellant that the testimony elicited by the government from her counsel was inadmissible hearsay. Counsel was not asked whether he had advised appellant of the order that she appear on May 20th; instead, he was asked whether, on that date, he had stated to the court that he had done so. An affirmative response to the former question, insofar as it constituted evidence of utterances and writings offered to show the effect on the hearer or reader, would not have been subject to attack as hearsay. *See, e. g.,* McCormick, Evidence § 249 (2d ed. 1972). But an affirmative response to the latter inquiry—the response here given—was clearly evidence of out-of-court statements offered to prove the truth of the matters asserted therein.[1]

1. The examination of the attorney was as follows:

"By Mr. Kissane [the Assistant U. S. Attorney]:

"Q. Mr. Milchen [appellant's attorney], calling your attention to court proceedings before this Court on the 20th of May, 1974, at approximately 2:00 p. m., when number thirty-two on the calendar was called by the clerk in Case Number 15324, do you recall the instance that I'm referring to, sir?

"A. Yes.

"Q. And do you recall whether or not you were present at that instance, sir?

"A. I was.

"Q. Do you recall the colloquy between the Court and yourself concerning the whereabouts of your client on that day, sir?

"A. I do.

"Mr. Cleary [appellant's counsel *pro tempore*]: I object to the contents of that colloquy as being hearsay, since we happen to have the witness now on the stand, and the reference back to that statement constitutes corroboration by referring back to words given at that time. So, therefore, we would object to any reference to the contents of that colloquy as being patent hearsay.

"The Court: Overruled. Proceed.

"By Mr. Kissane:

"Q. On that date, and occasion, Mr. Milchen, did you, in a statement to the Court, advise the Court—

"Mr. Cleary: Objection to the form of the question as being leading.

"The Court: Overruled.

"By Mr. Kissane:

"Q. —Advise the Court that you wrote Miss Diecidue [appellant] a letter on the 8th of May at the address that she had given you advising her that her case would be on calendar today, meaning the 20th of May, 1974?

"A. Yes. Are you reading from the transcript?

"Q. No, sir. I am not.

"A. Oh.

"Q. Did you further make a statement to the Court on that date—

"Mr. Cleary: Objection again to the statement. A continuing objection throughout, your Honor.

"The Court: You have a continuing objection, Mr. Cleary. Proceed, Mr. Kissane.

"By Mr. Kissane:

"Q. Did you further state to the Court that on Thursday afternoon preceding Monday the 20th that you had discussed the court appearance on the 20th with your client via telephone advising her that she had an appearance on the 20th of May?

"A. I so stated in court.

"Q. Did you make a statement to the Court concerning this date and that occasion that your client had advised you—

"Mr. Cleary. Again, unduly leading and suggestive. Counsel is just taking the transcript and putting words into the mouth of the witness.

"The Court: Oh, I don't think anybody is going to put words into the mouth of Mr. Milchen, Mr. Cleary. Let us proceed.

"By Mr. Kissane:

"Q. —That your client had advised you that she had received your letter of May 8th via the contents being disclosed to her via her father?

"A. I didn't say that to the Court. No. What I said was that—

"Mr. Cleary: I object to the witness. Nonresponsive. Testifying beyond the scope of the question.

"The Court: The objection will be sustained. Mr. Milchen, what did you say to the Court at that time?

"The Witness: I think I told the Court that she had advised me in the telephone conversation that her father had read the letter to her, not that she had received it from him.

"Mr. Cleary: I object again. Double hearsay, but I have not been too successful so far.

"The Court: Overruled.

"Mr. Kissane: Nothing further. No further questions. Thank you.

While an attorney's considered, across-the-bench representations to the court are presumably trustworthy, such statements are made neither under oath nor subject to cross-examination. Moreover, those here were uttered under circumstances in which counsel's own interests were arguably in conflict with the interests of his absent client. Faced with the court's inquiry, counsel would presumably perceive some compulsion to respond in order to demonstrate that he had fulfilled his duty, as an officer of the court, to communicate the appearance order to his client. In addition, counsel would be aware that his answer might be compelled by the court's contempt power.

True enough, unequivocal admissions by an attorney, clearly acting within the scope of his authority, may indeed be binding on his client. *See, e. g., Glick v. White Motor Company,* 458 F.2d 1287, 1291 (3d Cir. 1972); *United States v. Dolleris,* 408 F.2d 918, 921 (6th Cir. 1969), *cert. denied* 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); *Rhoades, Inc. v. United Air Lines, Inc.,* 340 F.2d 481, 484 (3d Cir. 1965); *State Farm Mut. Auto Ins. Co. v. Porter,* 186 F.2d 834, 841, 52 A.L.R.2d 499 (9th Cir. 1950); *Mangual v. Prudential Lines, Inc.,* 53 F.R.D. 301, 302 (E.D.Pa.1971). And such admissions may be received in evidence, even if they are hearsay, under the admissions exception to the hearsay rule.

■ But here, where counsel made the statements under some degree of compulsion and outside the presence of his client—who was, under the circumstances, a putative defendant—and where the information sought was in essence an element of a potential criminal charge, we think counsel's statements are not binding on his client as adopted or judicial admissions in the ensuing criminal prosecution. *See generally* 4 Wigmore, Evidence §§ 1063, 1078 (Chadbourn rev. 1972); McCormick, Evidence § 267 (2d ed. 1972). Were we to hold otherwise in the absence of evidence of appellant's express authorization to her counsel to make the representations, we might well be ratifying a violation of her privilege against self-incrimination or other substantial rights. *Compare Himmelfarb v. United States,* 175 F.2d 924, 931 (9th Cir. 1949), *cert. denied* 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949), *with United States v. Adams,* 422 F.2d 515, 518 (10th Cir. 1970), *cert. denied* 399 U.S. 913, 90 S.Ct. 2213, 26 L.Ed.2d 569 (1970).[2]

Reversed and remanded.

---

"The Court: Do you wish to cross-examine, Mr. Cleary?

"Mr. Cleary: Your Honor, based on all previous objections, incorporating all of them at this time, I move to strike all testimony of this witness and no cross.

"The Court: Your motion will be denied. You may stand down, Mr. Milchen.

"Mr. Cleary: With the consent of my—

"The Court: You may be excused, Mr. Cleary.

"Mr. Cleary: Thank you very much.

"The Court: And submit your bill to Mr. Milchen for your services.

"Mr. Kissane: If I may have just one moment, your Honor. The government rests, your Honor."

2. It matters little whether the district court took judicial notice of the record of the May 20th hearing; the representations of counsel contained therein, like his testimony at the "bail jumping" trial, are hearsay.