STATE OF INDIANA *v.* SONIA MOLES, GEORGE PAVLOVICH, ANTHONY CIFALDI, CHRISTINE WARD, A/K/A CHRISTINE MOSLEY, A/K/A C. WARD.

[Nos. 3-1273A170, 3-1273A171, 3-1273A172, 3-374A48. Filed November 24, 1975. Rehearing denied January 5, 1976. Transfer denied March 24, 1976.]

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellant.

*John Kappos, Hawk P. C. Kautz, Marlatt, Kappos & Gavit,* of Merrillville, for appellees. Moles, Pavlovich, Cifaldi, *Frederick T. Work, Work & Kimbrough,* of Gary, for appellee Ward.

STATON, P.J.—The trial court granted Cifaldi, Moles, and Pavlovich's motions to quash the State's indictment which alleged that they had violated the Indiana Adjusted Gross Income Tax Act. The State's appeal from the granting of these motions in three different criminal actions is consoli-

dated. Since *State* v. *Ward* presents the same question on appeal, it too is consolidated for the purpose of this opinion. Ind. Rules of Procedure, Appellate Rule 5(B).

Besides the granting of the motion to quash issue above, the State's appeal includes one additional issue: Was the State prejudiced by the denial of its petition for disqualification of the trial judge? A third issue is presented by the cross appeal of Cifaldi, Moles, and Pavlovich: Was the denial of their motion for discharge reversible error?

Our opinion concludes that the trial court committed error when it granted the motions to quash, and we reverse on this issue. We affirm as to the disqualification and discharge issues.

## I.

### Proceedings Below

On February 7, 1972, the Marion County Grand Jury returned separate indictments against Anthony Cifaldi, Sonia Moles, George Pavlovich, and Christine Ward. The indictments charged each of them with the offenses of (1) making a false and fraudulent tax return, (2) making a false statement in a tax return, and (3) swearing to or verifying a false and fraudulent statement in a tax return, in violation of IC 1971, 6-3-6-11 (Burns Code Ed.), which provides:

> "(a) It shall be unlawful for any taxpayer to fail or refuse to make any return required to be made under the provisions of this act [6-3-1-1—6-3-7-4], or to make any false or fraudulent return or false statement in any return, with intent to defraud the state or to evade the payment of the tax, or any part thereof, imposed by this act. . . . Any taxpayer violating any of the provisions of this section shall be guilty of a felony. . . . In addition to the foregoing penalties, any taxpayer who shall knowingly swear to or verify any false or fraudulent statement, with the intent to defraud the state or to evade the payment of the

tax imposed hereunder shall be guilty of the offense of perjury. . . ."

They appeared in Marion Criminal Court and filed motions to quash the indictments, which were overruled. Later, they filed motions to dismiss, alleging among other grounds that the "alleged offenses as stated in the indictment were not committed in Marion County, Indiana, and the Grand Jury did not have authority to inquire into offenses that were not committed within the jurisdiction of [the Marion Criminal Court]." These motions were accompanied by affidavits stating that the tax returns were prepared in Lake County, Indiana.[1] The Marion Criminal Court did not specifically rule on the motions to dismiss, but entered the following order of transfer on May 5, 1972:[2]

"This being a time before verdict or finding and it now appearing to the Court that the defendants, and each of them, are prosecuted in a county not having jurisdiction of the offense, the Court now orders that all of the papers and proceedings be certified and transmitted to the Criminal Court of Lake County, Indiana, and the Court further orders the Sheriff of Marion County to take the defendants, and each of them, and deliver them to the Sheriff of Lake County forthwith there to await the action of the Criminal Court of Lake County, The Court further orders that the State's witnesses, and each of them, are ordered recognized

1. Appellee Ward did not file an affidavit, but included, in her memorandum in support of the motion to dismiss, a statement that her return had been prepared in Lake County, Indiana.

2. The order in appellee Ward's cause was entered on May 12, 1972, and was substantially similar to the order quoted above. These orders were made pursuant to IC 1971, 35-1-38-2, Ind. Ann. Stat. § 9-1813 (Burns 1956) (superseded by IC 1971, 35-1.1-2-6 (Burns Code Ed.)), which at the time of the transfer order provided:

"When it appears, at any time before verdict or finding, that the defendant is prosecuted in a county not having jurisdiction of the offense, the court shall order that all the papers and proceedings be certified and transmitted to the proper court of the proper county, and order the sheriff to take the defendant and deliver him to the sheriff of the proper county, there to await the action of the proper court of such county. The witnesses also shall be recognized to appear at such other court, that the prosecution may be proceeded with according to law."

in the amount of five hundred dollars ($500.00) to appear at the Criminal Court of Lake County that the prosecution may be proceeded with according to law."

After transfer to the Lake Criminal Court, the State filed petitions seeking disqualification of the judge, which were denied. Cifaldi, Moles, Pavlovich and Ward filed motions for change of venue from the judge, which were granted. They filed motions to quash the indictments, which were granted. The State filed its motion to correct errors, addressed to the granting of the motions to quash, and the State's motion to correct errors was denied.[3] Cifaldi filed a motion for discharge for delay of trial, which motion was overruled.[4] Cifaldi, Moles, and Pavlovich filed motions to correct errors addressed to the denial of the motion for discharge, which were overruled.

## II.

### The Issues

The issues presented for our review are:

*By the State:*

(A) Did the Lake Criminal Court err in granting the motions to quash the indictments?[5]

---

3. The State may appeal from a judgment for the defendant setting aside or quashing an indictment or information. IC 1971, 35-1-47-2 (Burns Code Ed.).

4. It appears from the record that only appellee Cifaldi filed a motion for discharge. However, on the day set for argument on Cifaldi's motion, the cases of Moles, Pavlovich, and Cifaldi were consolidated, and it is unclear from the record whether this consolidation was intended to accomplish the filing of motions for discharge on behalf of Moles and Pavlovich. Although the court order denying the motion for discharge refers to a singular defendant and a singular motion, e.g., "Arguments are now heard on defendant's Motion for Discharge for Delay of Trial and the Court . . . finds that said Motion be, and the same is hereby overruled and denied," for the purpose of this appeal we will assume that all three appellees (Cifaldi, Moles, and Pavlovich) joined in the motion. Ward did not file a motion for discharge.

5. The State separately alleges that the Marion Criminal Court erred in transferring the causes to the Lake Criminal Court. Appellees assert that the State waived this objection on appeal by failing to state the objection with sufficient specificity in its motion to correct errors. Because our analysis of the question of the propriety of the granting of the

(B) Did the trial judge err in not disqualifying himself?

*By Appellees Cifaldi, Moles, and Pavlovich on Cross Appeal:*

(C) Did the Lake Criminal Court err in denying appellees' motions for discharge for delay of trial?

## A.
### *Granting of the Motions to Quash*

The Lake Criminal Court granted the motions to quash the indictments returned by the Marion Grand Jury on the ground that the Marion Grand Jury had no authority to inquire into offenses committed outside its jurisdiction. The State contends that the Lake Criminal Court was in error because the offenses charged were committed in Marion County. The question that must first be answered on appeal is: Where were the alleged offenses of making false tax returns, of making false statements in tax returns, and of swearing to or verifying false statements in tax returns committed?

The State contends that the offenses were committed where the tax returns were filed, that is, in Marion County. It asks us to construe the word "make" as it is used in IC 1971, 6-3-6-11, *supra,* to mean "file." Cifaldi, Moles, and Pavlovich[6] contend that the offenses were committed where the tax returns were prepared, that is, pur-

motions to quash involves a threshold determination of where the offenses were committed, and since we conclude that the offenses were committed in Marion County, we necessarily answer in the negative the question of the propriety of the transfer order. We deem it unnecessary to discuss waiver of an argument to which we must necessarily respond.

6. Ward did not file an appellee's brief. It has been held that failure to file an appellee's brief may be taken as confession of error and, if a prima facie case is made by appellant, the judgment may be reversed. *See, e.g., Meadows* v. *Hickman* (1947), 225 Ind. 146, 73 N.E.2d 343; *Bill* v. *Bill* (1972), 155 Ind. App. 65, 290 N.E.2d 749. This rule is not for the benefit of appellant, but for the protection of the court, and its invocation is discretionary with the court. *See, e.g., Harrington* v. *Hartman* (1968), 142 Ind. App. 87, 233 N.E.2d 189. Since appellee Ward is a defendant in a criminal prosecution, and since the briefs of appellees Cifaldi, Moles, and Pavlovich present to us the shortcomings of the State's argument in the Ward case, we prefer to decide the issue on the merits.

suant to their affidavits, in Lake County. They argue that "make" means "prepare," and that the proscribed act of preparation of a false return or statement in a return is completed before the return is filed. Their affidavits state that their returns were "prepared and made in Gary, Lake County, Indiana." However, they do not enlighten us further regarding their feelings about when the act of preparing a return is complete.

Certainly the word "make" as it is used in section 6-3-6-11 is ambiguous. "Making" a return, if used in the sense of preparation, could encompass any act from the first compilation of figures to be plugged into a blank tax form, to the placing of the first figure on the blank form, to the placing of the final figure on the filled-in form, to the signing of the filled-in form, to the filing of the filled-in form with the Department of Revenue.

In construing an ambiguous statute, this Court must reasonably interpret the statutory language to discover the legislative intent and goal. *Pryor* v. *State* (1973), 260 Ind. 408, 296 N.E.2d 125. A fundamental rule of statutory construction is that, if the statute is susceptible of more than one interpretation, this Court may consider the consequences of a particular construction. *Economy Oil Corp.* v. *Indiana Department of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215. It cannot be presumed that the legislature intended an absurd or illogical application of a statute. *Pryor, supra.*

Statutory crimes are "often defined, hidden away amid pompous verbosity, in terms of a single verb . . . [which] essential verb usually contains the key to the solution of the question: In what district was the crime committed?" A. M. DOBIE, HANDBOOK OF FEDERAL JURISDICTION AND PROCEDURE § 127, at 511 (1928). In the instant statute, the verbs are "make" and "swear to or verify." However,

these essential verbs cannot be properly interpreted unless considered in conjunction with their essential object—the "tax return." Thus, the question we must answer is: When does a taxpayer *"make"* a *tax return?*

We conclude that a taxpayer does not "make" a tax return until the return is filed with the Department of Revenue. In reaching this conclusion, we find no Indiana cases to guide us,[7] but we find helpful the reasoning of federal courts considering the question of venue of offenses in violation of federal tax fraud statutes.

The federal statute most similar to IC 1971, 6-3-6-11, *supra*, is 26 U.S.C. § 7206(1), which provides that any person who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony. . . ." In *United States* v. *Wyman* (W.D. Mo. 1954), 125 F. Supp. 276, 280-81, the court considered the proper venue of a section 7206(1) offense. The court stated:

"The preparation of a return is a lawful or unlawful act according to the intent and manner of its preparation.

---

7. We note the slight support for this construction found in the case of *Pontarelli* v. *State* (1931), 203 Ind. 146, 176 N.E. 696, in which the court considered a statute that read: "Whoever, knowing the same to be false or fraudulent, *makes out or presents* for payment, or certifies as correct to . . . the board of commissioners or other officer of any county . . . any claim, . . . or other evidence of indebtedness, false or fraudulent, for the purpose of procuring the allowance of the same, or an order for the payment thereof, out of the treasury of said . . . county . . . shall, on conviction, be imprisoned. . . ." 203 Ind. at 165-66, 176 N.E. at 702. The court said: "This statute above quoted . . . contemplates the presentation of a claim or other evidence of indebtedness to the officers named in the statute. . . . Appellee has cited no authority, and we have been unable to find any, where a conviction was upheld unless there was an actual presentation or filing of an instrument with the proper officer or officers." 203 Ind. at 169, 176 N.E. at 703. The statute considered in *Pontarelli* proscribed both the act of making out a false claim and the act of presenting a false claim. Nonetheless, the court held that the offense of making out a false claim required some sort of presentation to the proper official.

> The work of preparation is ended before it can be presented. The making of a false affidavit is complete when the false oath, or subscription, has been completed. . . . In . . . such case the venue is . . . at the place where the preparation has been completed and subscription effected."

The holding of the *Wyman* court was questioned in *United States* v. *Horwitz* (N.D. Ill. 1965), 247 F. Supp. 412, as unprecedented and unexplained. Later, in *United States* v. *Gilkey* (E.D. Pa. 1973), 362 F. Supp. 1069, 1071, the court "agree[d] with *Horwitz* that *Wyman* is not the law." In *Gilkey*, as in *Wyman*, the court considered the proper venue of a section 7206(1) offense, but in *Gilkey*, unlike in *Wyman*, the court determined that the offense was committed where the return was filed. The defendant in *Gilkey* moved for a new trial and for arrest of judgment on the ground that the government did not prove that the offenses charged were committed in the Eastern District of Pennsylvania. The court determined that the offenses were not complete until the returns were filed in the Eastern District of Pennsylvania. The *Gilkey* court reasoned:

> "While 'make' and 'subscribe' are words that connote preparing and signing, we think that a filled-in form 1040 does not become a 'return,' and a taxpayer does not 'make a return,' until it is filed with the Internal Revenue Service. To hold otherwise would be not only to defy precedent, but also to offend common sense notions of fairness. For if the offense described in § 7206(1) is completed once the tax form is filled in and signed, then a person can be prosecuted for (1) signing a return he never intends to file, or (2) signing a false return but then changing his mind about breaking the law and sending in a correct return instead, both of which are acts wholly unprejudicial to the functioning of the government. They are totally immaterial in that they have no capacity whatsoever to influence government action. In other words, the taxpayer has the 'right of self-correction.' This view was aptly expressed in United States v. Bithoney, 472 F.2d 16, 23 (2d Cir.), cert. denied, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973), quoting from the district court opinion in United States v. Newton, 68 F. Supp. 952, 954 (W.D. Vir. 1946).

'If the defendant should assist a taxpayer in the prepara-
tion of the most dishonest or fraudulent kind of a return,
and then immediately have a change of heart, tear up
the document, and throw it in the wastebasket it is in-
conceivable to me that he should have committed a
crime.' "

362 F.Supp. at 1071 (footnote omitted). Later in the opinion,
the *Gilkey* court, 362 F.Supp. at 1072, exposed the untenability
of the position that the returns are made, and the offenses
committed, where the forms are prepared and signed:

"For the government would then be put to discovering
and proving where the defendant was sojourning when he
prepared the return or when he signed it, a task which
will generally be impossible unless the defendant himself
reveals that information prior to indictment. We note in
this connection that there is no place on the tax return
form where the signer is asked to indicate where he pre-
pared or signed it."

Our system of taxation has as its basic premise the tax-
payer's duty of self-assessment, which logically implies that
the taxpayer has a right of self-correction. We agree with the
court in *Horwitz, supra,* 247 F.Supp. at 414: "It would not
seem possible to conclude that obligations under the revenue
laws have not been fulfilled until the opportunity for self-
correction is lost, nor would it seem that any defect in a re-
turn could become material until such time as the return
was actually filed."

Our conclusion that a taxpayer makes a return when he
files the return with the Department of Revenue is supported
not only by the implicit and essential right of self-correc-
tion, but also by the fact that any other construction spawns
innumerable potential evasion devices.[8] If making a return

8. We note that the legislature used both terms—"make a return" and
"file a return"—in various sections of the Indiana Adjusted Gross Income
Tax Act. See IC 1971, 6-3-4-1, 6-3-4-3, 6-3-6-1(f), 6-3-6-1(i) (Burns Code
Ed.). In all cases, the verbs "make" and "file" are used with the essential

were construed to mean doing some particular act of preparation prior to the actual filing of the return, it is apparent that any taxpayer desiring to evade the consequences of the penal provisions of the tax statute could do that particular act out of the state and thereby contend that he had not committed an offense in Indiana. One solution might be to say that the act of making a return is a continuous act, occurring in any place where some part of the return is prepared. However, unless the continuing act of preparation is held to include the filing of the return, the same potential evasion devices are available. We will not interpret the statute in such a way that it defeats its own enforcement.

We conclude that a filled-in tax form does not become a return until it is filed. It follows, then, that a taxpayer cannot make a false statement in a *return,* or swear to or verify a *return,* until the return is filed. In the present case, the returns were filed in Marion County, Indiana. The indictment issued from the Marion County Grand Jury, and the prosecution was begun in the Marion Criminal Court. Since the offenses were committed in Marion County, the Marion Criminal Court was the proper venue of the causes. The Marion Criminal Court, having both subject-matter jurisdiction and venue of the actions, erred when it transferred the causes to the Lake Criminal Court. The Lake Criminal Court erred when it granted appellees' motions to quash the indictments, since the issuing Grand Jury did have authority to inquire into offenses committed within Marion County.[9]

object "return." The legislature's use of the two verbs in different contexts does not indicate an intent inconsistent with our conclusion that a filled-in tax form does not become a tax "return" until that filled-in tax form is filed with the Department of Revenue.

9. Since the indictments were brought by a grand jury of a court with both subject matter jurisdiction and venue of the causes, we need not reach the question of whether an indictment brought in a county of improper venue is good in the transferee county or whether a new indictment must be sought by the State before proceeding with the prosecution in the transferee county.

## B.

### *Disqualification of the Judge*

The State contends that the judge of the Lake Criminal Court erred in overruling the State's petitions for his disqualification. Judge McKenna, at the time this prosecution was commenced, was himself a defendant in a federal income tax evasion prosecution. According to the State's brief, the judge had been named as a witness in the present causes. The State filed Petitions for Disqualification on May 12, 1972.[10] On May 22, 1972, the court denied the petition. On June 23, 1972, Cifaldi, Moles and Pavlovich filed motions for change of venue from the judge, which were granted on June 26, 1972. On July 10, 1972, Ward moved for change of venue from the judge which was granted the same day. In each of the proceedings, a special judge was qualified and assumed jurisdiction. Even if we assume that Judge McKenna erred in failing to disqualify himself, in view of the appointment of a special judge to try each of the causes, we find no prejudice to the State. In the absence of prejudice, this Court will not reverse a decision of the trial court on appeal. *Ashley* v. *City of Bedford* (1974), 160 Ind. App. 634, 312 N.E.2d 863. The State's failure to demonstrate prejudice precludes any further consideration of this argument.

## C.

### *Motions for Discharge*

Cifaldi, Moles, and Pavlovich, in their cross appeals, assign as error the failure of the trial court to discharge them pursuant to Ind. Rules of Procedure, Criminal Rule 4(C). The following version of CR. 4(C) is applicable:[11]

---

10. In the Ward case, the State filed its petition on May 26, 1972, and the petition was denied on May 30, 1972.

11. CR. 4(C) was amended in 1973 and 1974. In determining what version of CR. 4(C) is applicable, we must look to the date of the pro-

"(C) Defendant on recognizance. No person shall be held by recognizance to answer an indictment or affidavit, without trial, for a period embracing more than one year continuously from the date on which a recognizance was first taken therein; but he shall be discharged except as provided by subdivision (A) of this rule.

"(A) . . . except where a continuance was had on his motion, or the delay was caused by his act. . . ."

Under this version of the rule, the one-year period begins to run anew on the last date of the delay chargeable to the defendant.[12] *Moreno* v. *State* (1975), 166 Ind. App. 441, 336 N.E.2d 675.

The sequence of events crucial to determination of this issue is as follows:

| | |
|---|---|
| February 7, 1972 | Indictments filed and defendants arrested |
| February 8, 1972 | Moles and Pavlovich released on recognizance |
| February 10, 1972 | Cifaldi released on recognizance |
| May 5, 1972 | Marion Criminal Court orders transfer of the causes to the Lake Criminal Court |
| May 12, 1972 | Records of the proceedings entered in Lake County |
| May 12, 1972 | State files petition for disqualification of judge |

ceedings that started the one-year period running. *See Shack* v. *State* (1972), 259 Ind. 450, 288 N.E.2d 155. Prior to February 1, 1974, the effective date of the 1973 amendment, the time began to run from the "date on which a recognizance was first taken." In the present cases, the recognizance was first taken in February 1972; the time began to run at that time under the rule then in effect; and the rule then in effect is controlling.

12. *See Summerlin* v. *State* (1971), 256 Ind. 652, 271 N.E.2d 411; *Holt* v. *State* (1974), 262 Ind. 334, 316 N.E.2d 362; *Johnson* v. *State* (1974), 262 Ind. 164, 313 N.E.2d 535 (same rule under pre-amendment version of CR. 4(A)); *State* v. *Grow* (1970), 255 Ind. 183, 263 N.E.2d 277 (same rule under Supreme Court Rule 1-4D(3)).

We note that under the present version of CR. 4(C) and CR. 4(F), the time limitation in CR. 4(C) does not begin to run anew from the last day of delay chargeable to defendant, but is merely tolled by the period of delay caused by defendant's acts.

| | |
|---|---|
| May 22, 1972 | State's petition for disqualification denied |
| June 20, 1972 | *Cifaldi, Moles and Pavlovich move to quash indictments* |
| June 23, 1972 | Cifaldi, Moles, and Pavlovich file motions for change of judge |
| June 26, 1972 | Motions for change of judge granted |
| June 28, 1972 | Parties had agreed upon a continuance to this date |
| July 6, 1972 | *Special judge James K. Whitaker qualifies and assumes jurisdiction* |
| July 19, 1972 | Cifaldi, Moles, and Pavlovich request that motions to quash be set for argument |
| August 8, 1972 | Arguments on motions to quash set for this date |
| August 18, 1972 | Additional authorities on motion to quash issue to be submitted before this date; State files additional authorities, and Cifaldi, Moles and Pavlovich reply on August 28, 1972. |
| November 8, 1972 | Motions to quash sustained |
| January 5, 1973 | State files motion to correct errors addressed to granting of motions to quash |
| August 2, 1973 | Court sets State's motions to correct errors for hearing on September 13, 1973 |
| August 7, 1973 | *Cifaldi files motion for discharge for delay of trial* |
| September 13, 1973 | Causes of Cifaldi, Moles, and Pavlovich consolidated; Court denies motion for discharge; Court denies State's motion to correct errors. |

The right to a speedy trial is guaranteed by both the United States and the Indiana Constitutions. U.S. CONST. amends. VI, XIV; IND. CONST. art. 1, § 12. The United States Supreme Court has said that this right:

"... is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety

and concern accompanying public accusation and to limit the possibility that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect upon both the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers* v. *Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950." *United States* v. *Ewell* (1966), 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627.

Although the Constitutional provisions guarantee a speedy trial, they do not guarantee a trial within any set time, because it is impossible to "say how long is too long in a system where justice is supposed to be swift but deliberate." *Barker* v. *Wingo* (1972), 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed. 2d 101, 113; *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307. In *Barker, supra,* 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113, the Supreme Court stated: "The States, of course, are free to prescribe a reasonable period consistent with constitutional standards. . . ." This is exactly what Indiana has done by adopting Criminal Rule 4, which establishes a reasonable period in which an accused must be brought to trial.

An accused, therefore, has two distinct but related rights to have the processes of justice move deliberately toward the end of obtaining a trial within a reasonable and agreeable time—one right is guaranteed by the Constitutions and one by the implementing CR. 4. A violation of CR. 4 is *per se* a violation of the accused's constitutional right to a speedy trial. *Fossey* v. *State* (1970), 254 Ind. 173, 258 N.E.2d 616.

In the present case, we are concerned only with the question of a violation of the CR. 4(C) standard relating to the reasonable time for trial of an accused on recognizance. Although CR. 4(C) is worded to require discharge of a person "held by recognizance to answer an indictment or affidavit, without trial, for a period embracing more than one year continuously from the date on which a recognizance was first taken," it is important to remember that the right being protected is the right to a speedy trial, as defined in the Rule. Rule 4(C) does not establish a right to a discharge, but provides the remedy of discharge when the right to a speedy trial, as defined in the Rule, has been violated. This Court must determine whether the remedy should be invoked in the instant case.

CR. 4(C) is not an absolute rule, but is subject to limitations and exceptions, such as the exception to discharge when periods of delay are caused by defendant's acts or when a continuance is had on defendant's motion. These exceptions are recognitions of the fact that the deliberate speed of justice cannot be absolute. A defendant may desire a continuance, or may cause delay, or may acquiese in delay, and thereby effectively waive and extend the one-year reasonable time for trial. In such cases, swift and deliberate justice is defined, not by the Rule, but by the demands of the individual defendant.

Under the version of CR. 4(C) applicable in the present case, the one-year period runs from the date of the last delay chargeable to the defendant. In determining if any delay was caused by defendant's act, the crucial consideration is whether defendant's act postponed his being brought to trial and delayed the setting of a trial date. It does not matter that the defendant's act was justifiable or meritorious, since it is not the motive behind defendant's actions, but the effect of his actions, that determines whether the delay is chargeable to him. *See State* v. *Grow* (1970), 255 Ind. 183, 263 N.E.2d 277.

In the present case, defendants' motions for change of venue from the judge were granted. Until the special judge qualified and assumed jurisdiction, there was in motion a chain of events, caused by defendants' request, that delayed their being brought to trial. *See Norris* v. *State* (1968), 251 Ind. 155, 240 N.E.2d 45, *cert. denied,* 395 U.S. 905, 89 S.Ct. 1743, 23 L.Ed.2d 218 (1969) ; *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N.E.2d 649 (decisions under prior versions of the Rule). Without a judge there can be no trial. The change of judge was perfected on July 6, 1972, and, under the version of the rule applicable in this case, the period of the rule began to run anew at that time.

The motions for discharge, pursuant to CR. 4(C), were filed on August 7, 1973, which was more than one year after the special judge's qualification. During this intervening thirteen-month period, nothing was done to delay trial. Only the pending motions to quash the indictments remained to be ruled upon. The question becomes: Is there delay in setting the trial date caused by the filing of motions to quash? If the answer is yes, and we conclude that it is, then the second part of the question is whether this delay be chargeable to defendants Cifaldi, Moles, and Pavlovich?

Motions to quash must be specially and carefully treated in relation to the discharge provisions of CR. 4(C). A motion to quash " 'when sustained ends the prosecution under the pending affidavit or indictment,' . . . [but] the sustaining of the motion to quash does not 'wipe out' the original charge." *State* v. *McCarty* (1962), 243 Ind. 361, 368, 185 N.E.2d 732, 737, *quoting from Zehrlaut* v. *State* (1951), 230 Ind. 175, 183, 102 N.E.2d 203, 206. The original affidavit or indictment, even though it is quashed, "continues to have the force and effect necessary to hold the accused by recognizance until such time as a prosecution, based upon the same factual circumstances, may be refiled." *McCarty, supra,* 243 Ind. at 368,

185 N.E.2d at 737. The continuing effect of affidavits and indictments is provided by statute.[13]

In *McCarty*, the defendant filed a motion to quash, which was granted. The State did not appeal the granting of the motion to quash but filed a new affidavit. The defendant moved for discharge for delay of trial, pursuant to IC 1971, 35-1-27-1, Ind. Ann. Stat. § 9-1403, the applicable discharge statute which provided that "No person shall be held by recognizance to answer an indictment or affidavit, without trial, for a period embracing more than three [3] terms. of court. . . ." The defendant argued that, given that the statute provides that a quashed affidavit has the continuing force to hold the accused by recognizance, and given that trial was not had within three terms of court following the filing of the first, albeit defective, affidavit, discharge should be granted. The trial court agreed and the State appealed. The trial court was affirmed.

The Court held in *McCarty* that "the delay caused by the filing of such a motion [to quash] will not, *under the facts of this case*, be charged to the accused." 243 Ind. at 369, 185 N.E.2d at 737 (emphasis added). The court noted that the effect of any other decision might be to encourage harassment techniques:

"Under the ruling thus urged by the state [that the period of the rule should stop running when an affidavit is

13. Ch. 169, § 195, [1905] Ind. Acts 584, codified at IC 1971, 35-1-23-29, Ind. Ann. Stat. 9-1130 (Burns 1956) (repealed 1973) provided:

"Accused when not discharged.—If the motion to quash be sustained the defendant shall not be discharged, unless the court should be of opinion that the objection can not be avoided by a new indictment, or affidavit. And in case an indictment or affidavit is quashed, the court shall direct the case to be resubmitted to the grand jury which found the indictment, or to another grand jury, or the prosecuting attorney may file a proper affidavit against the defendant, charging him with the offense. And the court must detain the defendant in custody, or recognize him with sufficient surety, if the offense be bailable, to answer to the offense, and if necessary recognize the witnesses to appear and testify."

The present statute provides similar consequences. IC 1971, 35-3.1-1-4 (Burns Code Ed.).

quashed], the state could by the intentional filing of successive defective affidavits keep an accused in jail or under recognizance for the particular charge, with his ultimate trial or discharge being subject only to the will of the prosecuting attorney. The effect would be comparable to placing the accused under an indeterminate probation without first having filed a valid charge against him or having proved his guilt." *Id.*

The *McCarty* Court expressly did not rule on the question before us. In a footnote, however, the *McCarty* Court suggested the result that might be reached in a case like the present appeal:

"This opinion does not purport to decide the issue which may be presented under circumstances where a motion to quash is sustained and appeal therefrom is taken by the state and, on appeal, it is determined that the trial court erred in sustaining the motion to quash. Under such circumstances it would seem that the defendant should not have the advantage of the delay caused by an error of which he was the instigator." *Id.* at 370 n.1, 185 N.E.2d at 738 n.1.

We conclude, on the suggestion of *McCarty* and under the limited facts of the case before us, that the delay caused by the filing of a motion to quash an indictment, when it is determined on appeal that the trial court erred in sustaining the motion to quash, is delay chargeable to the defendant. The effect of filing a motion to quash is to delay trial, since no trial can be had when no indictment or affidavit is in existence. This is undisputed, even in *McCarty*. It is also undisputed that even a quashed indictment has the continuing force to hold the accused on recognizance until new charges are filed. The statutory provision providing for the continuing effect of affidavits and indictments, coupled with the recognized harassment possibilities attending a rule that each successive affidavit or indictment starts anew the period of the discharge remedy, persuaded the

*McCarty* court to hold that a motion to quash, under the facts of the *McCarty* case, is not delay chargeable to defendant.

In the instant case, another consideration is present. The State elected to stand on the charges as filed, and we have determined that those charges were good. It is provided by statute that the State has a right to make this election. IC 1971, 35-1-47-2 (Burns Code Ed.). *See State* v. *Silver* (1962), 243 Ind. 67, 182 N.E.2d 587. If an indictment is good, the State is not required to make it better. If we were to hold that the delay caused by filing a motion to quash is in all cases delay that is not chargeable to the defendant, we would severely limit the State's statutory right to appeal the quashing of a good indictment. Deliberate and speedy justice is not a one-sided proposition, with the balance weighing only on the side of the rights of the accused.

We conclude that the delay caused by the filing of motions to quash, under the limited facts of this case, is chargeable to defendants.

The trial court's judgment denying Cifaldi, Moles, and Pavlovich's motions for discharge is affirmed. The order of the trial court denying the State's petitions for disqualification of the judge is affirmed. The trial court's judgment granting Cifaldi, Moles, Pavlovich and Ward's motions to quash is reversed, and these causes are remanded to the Lake Criminal Court for transfer back to Marion Criminal Court for further proceedings.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 337 N.E.2d 543.