**Thomas O'NEILL, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9108–CR–255.**

Court of Appeals of Indiana, Fifth District.

Aug. 20, 1992.

Transfer Denied Oct. 6, 1992.

Robert C. Perry, Steckler, Perry & Ryan, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Judge.

Thomas O'Neill appeals both his conviction of four counts of armed robbery and his adjudication as a habitual offender. We affirm.

O'Neill raises five issues in his brief. We consolidate and restate these issues as follows:

1. Was O'Neill deprived of his right to a speedy trial?

2. Should the trial court have excluded from evidence O'Neill's confession?

3. Did the trial court err in admitting into evidence documents which were not properly certified?

4. Was O'Neill deprived of his right to counsel when the trial court compelled his defense counsel to testify in order to provide the foundation for admission into evidence of certain documents?

The following are the facts most favorable to the judgment of the trial court. In the early morning hours of May 28, 1989, O'Neill entered the Subway Sandwich shop located at 934 East Hanna in Indianapolis. He ordered a sandwich, and when the time came to pay, he gave the Subway employee who had waited on him a large bill in payment. When the employee opened the cash drawer to deposit the bill and retrieve O'Neill's change, O'Neill produced what appeared to be a semiautomatic pistol and ordered the employee to give him the money in the drawer. O'Neill also demanded money from the other customers who were in the shop.

Several of the customers gave O'Neill their money. The Subway employee also gave O'Neill money from the cash drawer. O'Neill then left the shop and ran off into the night.

Detective David Burks, who was investigating the Subway robbery, received information that O'Neill had committed the crime. After he received this information, Burks interviewed the Subway employee and showed him an array of photographs including O'Neill's photograph. The Subway employee identified O'Neill as the robber. Two of the customers who also had been victimized identified photographs of O'Neill in similar photo arrays. Following these identifications, officers of the Indianapolis Police Department obtained an arrest warrant and arrested O'Neill. On the evening of O'Neill's arrest, Detective Burks interviewed O'Neill and obtained a taped statement in which he confessed to the robbery.

O'Neill asserts that the state violated both the Indiana rules of criminal procedure and the federal constitution when it brought him to the trial that resulted in his conviction. In his appellant's brief, O'Neill offers extensive argument that various periods of delay both before and after his first trial—which ended in a mistrial—should be attributed to the state for purposes of determining whether the delay violated Ind.Crim.Rule 4(C) or United States Const. amend VI. In his reply brief he abandons this argument with regard to C.R. 4(C) in favor of the assertion that the state failed to bring him to trial within a reasonable period of time following the aborted trial. The state argues that it first brought O'Neill to trial within one year—excluding delays attributable to O'Neill—of the date of his arrest. In addition, the state argues that it brought O'Neill to retrial within a reasonable period of time following the mistrial.

■ The determination of whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee largely depends on the specific circumstances of the case. *Barker v. Wingo* (1972), 407 U.S. 514, 530–531; 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117. In judging whether the specific circumstances establish a violation of the speedy trial right, the court balances four factors: 1) the length of the delay; 2) the reasons for the

delay; 3) the timeliness and vigor of the defendant's assertion of the right to a speedy trial; and 4) the prejudice, if any, the delay caused the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. In order to ensure that it does not deny criminal defendants the right to a speedy trial, a state may adopt a presumptive rule setting a fixed time limit within which criminal cases normally must be brought to trial. *Barker*, 407 U.S. at 430 n. 29, 92 S.Ct. at 2192 n. 29, 33 L.Ed.2d at 116 n. 29.

Our supreme court has adopted such a rule, C.R. 4(C), which provides in part:

"No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar...."

This rule is intended to give effect to the right to a speedy trial guaranteed by both the federal and state constitutions. *State v. Moles* (1976), 166 Ind.App. 632, 646, 337 N.E.2d 543, 552. However, the time limits for bringing a defendant to trial set forth in the rule are not coextensive with the requirements of the federal and state constitutions. *Williams v. State* (1976), 265 Ind. 190, 193, 352 N.E.2d 733, 738; they are, in fact, more rigorous than the constitutional requirements. *Tyner v. State* (1975), 166 Ind.App. 45, 49, 333 N.E.2d 857, 859.

Our supreme court has held that C.R. 4(C) does not anticipate mistrials. *State ex rel. Brumfield v. Perry Circuit Court* (1981), Ind., 426 N.E.2d 692, 695. Because the rule does not specify a time in which a retrial must be brought following a mistrial, the court held that the state is required to bring the defendant to retrial within a reasonable time. *Id.; State v. Roth* (1992), Ind.App., 585 N.E.2d 717, 718. The trial court possesses the discretion to determine what constitutes a reasonable time. *Brumfield*, 426 N.E.2d at 695.

When a trial court is vested with discretion in a matter, we may reverse its decision only if it abuses its discretion. *Harvest Insurance Agency v. Inter–Ocean Insurance Co.* (1986), Ind., 492 N.E.2d 686, 688. The trial court commits an abuse of discretion only when it reaches an erroneous conclusion and judgment—that is to say, one which is clearly against the logic and effect of the facts or the reasonable, probable deductions which may be drawn from the facts and circumstances of the case. *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 290; *Klagiss v. State* (1992), Ind.App., 585 N.E.2d 674, 680.

Here, we do not find that the trial court abused its discretion in bringing O'Neill to trial approximately six months after the declaration of the mistrial. The trial court originally scheduled the second trial for December 3, 1990. However, on that day the court, apparently on its own motion, vacated the jury trial setting and continued the case due to calendar congestion.[1] O'Neill has failed to show this court any facts which suggest that the four month delay after the trial court vacated the December 3 trial setting was not due to calendar congestion, and he has offered no other facts to show that this delay was unreasonable.[2] In the absence of such

---

1. The court vacated the trial date and continued the case generally by means of a minute entry. It did not enter an order setting the case for trial within a reasonable time as required by C.R. 4(C). However, as we noted earlier, the supreme court held in *Brumfield* that C.R. 4(C), by its very terms, did not govern the proceedings following the declaration of a mistrial. We therefore refuse to hold that the express provisions contained in C.R. 4(C) governing the form in which the trial court should note calendar congestion apply when the court declares a mistrial.

2. O'Neill does assert that the trial court's assertion of calendar congestion was unreasonable and asserts that the court records show that the trial court did not hold another trial on December 3. He has not produced any court record to substantiate this claim, however. Instead, he cites to a page of the record which contains a portion of a brief supporting a motion for dis-

facts, we cannot say that the six month delay was against the logic and effects of the particular facts of this case, and we are not prepared to hold that a six month delay following a mistrial is unreasonable as a matter of law. C.R. 4(C) provides no ground for reversal here.

Furthermore, even apart from the mandatory time limits set forth in C.R. 4(C), we do not find that the trial court violated O'Neill's speedy trial rights when it conducted the retrial commencing on April 8, 1991. Given the particular circumstances of this case, the time that elapsed between O'Neill's arrest and retrial was reasonable.

The following are the dates of the events relevant to O'Neill's sixth amendment claim:

June 1, 1989   Defendant charged with 6 counts of armed robbery.

June 2, 1989   Defendant arrested.

June 5, 1989   Initial hearing held.

July 11, 1989   Trial set for 8/16/89.

July 24, 1989   Defendant makes *pro se* motion for continuance.

Aug. 9, 1989   Defendant files motion to suppress statement.

Aug. 15, 1989   New defense counsel is appointed;  pre-trial set for 9/26/89.

Sept. 26, 1989   Defendant moves to continue pre-trial;  reset for 10/17/89.

Oct. 17, 1989   Trial set for 12/11/89.

Nov. 15, 1989   Defendant moves for psychiatric examination.

Dec. 7, 1989   Drs. Nie and Keglar appointed to examine defendant.

Dec. 11, 1989   State requests continuance; pre-trial set for 12/28/89.

Feb. 28, 1989   Secretarial mix-up discovered which delays defendant's second psychiatric examination.  Dr. Perry appointed to conduct second examination.

Mar. 9, 1990   Defendant stipulates to doctors' reports;  pre-trial set for 3/20/90.

Mar. 20, 1990   Trial set for 5/23/90.

Apr. 27, 1990   State moves to continue suppression hearing set for this date; reset for 5/18/90.

May 16, 1990   Defendant moves to continue suppression hearing;  reset for 6/15/90.

May 17, 1990   Court vacates 5/23/90 trial date' pre-trial set for 7/1/90.

Jul. 10, 1990   Trial set for 8/20/90.

Aug. 16, 1990   Court vacates 8/20/90 date and sets guilty plea hearing on 8/17/90.

Aug. 17, 1990   Court rejects guilty plea; defense counsel Ragland informs court he is prepared for trial for following Monday;  defendant informs court he wants new attorney;  court appoints new defense counsel Clutter;  pre-trial set for 9/4/90.

Sept. 4, 1990   Trial set for 10/1/90.

Oct. 1, 1990   Jury sworn;  hearing conducted on defendant's motions for discharge and to suppress his statement.

Oct. 3, 1990   Court grants defendant's motion for mistrial due to admission of prejudicial testimony;  pre-trial set for 10/23/90.

Oct. 23, 1990   Trial set for 12/3/90.

Dec. 3, 1990   Trial continued due to congested calendar;  pre-trial set for 1/8/91.

Jan. 8, 1990   Trial set for 3/4/91.

Feb. 21, 1990   Defendant moves for discharge.

Mar. 4, 1991   Defendant unprepared for trial;  court denies defendant's motion for discharge and request for interlocutory appeal;  resets trial date 4/8/91.

Apr. 8, 1991   Jury sworn.

Apr. 9, 1991   Court grants defendant's motion for directed verdict on one count; defendant found guilty on four counts and not guilty on final count.

■ This summation shows that much of the delay in bringing this case to trial stemmed directly from O'Neill's actions. Four hundred and eighty-seven days elapsed between O'Neill's arrest and the first trial.  The state admits that it is responsible for the seventy-five day period between O'Neill's arrest on June 2, 1989 and the first scheduled trial date on August 16.  However, before the August 16

---

charge.  In this brief, he asserted to the trial court that the court records showed that no trial was held on the third, but he did not produce

the records.  O'Neill's arguments to the trial court are not facts upon which this court may find error.

trial date, O'Neill filed both a motion for continuance and a motion to suppress his confession. These motions resulted in the trial being reset for December 11. The 117 day delay caused by these motions is O'Neill's responsibility. *Battle v. State* (1981), 275 Ind. 70, 73, 415 N.E.2d 39, 41.

■ The December 11 trial date was continued until May 23, 1990 due to O'Neill's motion for psychiatric evaluation. Due to a secretarial error, one of the court appointed psychiatrists did not receive his appointment and never examined O'Neill. The court was forced to appoint another psychiatrist, which caused additional delay. Despite O'Neill's assertion that he is not responsible for the delay attributed to the error in appointing the psychiatrist, we conclude that this delay is his responsibility.

Generally, trial delays caused by a defendant's motion for psychiatric examination are the responsibility of the defendant. *See, e.g., Brown v. State* (1981), 275 Ind. 441, 445, 417 N.E.2d 333, 336. O'Neill has not cited to this court any precedent that holds that an error in appointing an examining psychiatrist shifts the responsibility for the delay occasioned by the motion for psychiatric examination to the state. Under the circumstances presented here, we see no need to create such an exception to *Brown.* We therefore hold that the one hundred and sixty-three delay caused by O'Neill's motion for psychiatric examination is his own responsibility and is not to be charged to the state.

■ The ninety day period of delay between the May 23 trial setting and the August 20 trial setting is also O'Neill's responsibility. The court had scheduled a hearing on O'Neill's motion to suppress the confession for May 18, but continued the hearing to June 15 on O'Neill's motion. Obviously, the trial court could not have proceeded with the trial until after the suppression hearing, and delay in resetting the trial date is O'Neill's responsibility.

■ The final period of delay from August 20 until the aborted trial on October 1 is also O'Neill's responsibility. On August 16 the trial court vacated the August 20

trial setting and scheduled a hearing for August 17 on O'Neill's tendered guilty plea. However, at the hearing the court rejected the plea. O'Neill's counsel indicated that he was ready to proceed with trial on the following Monday, but O'Neill informed the court that he wanted a new attorney. The court acceded to O'Neill's wishes. Delays caused by plea changes and requests to change attorneys are the responsibility of the defendant. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1091. Thus, O'Neill is responsible for this forty-two day delay.

Thus, all but seventy-five days of the period between O'Neill's arrest and his first trial were the result of his own actions. Approximately six months elapsed between the declaration of the mistrial and the retrial. The records of the court indicate that most of this delay was due to court congestion. As we noted above, O'Neill has not shown this court any evidence that the delay was not caused by congestion, and, in the absence of such evidence, we will take the trial court at its word. In any event, even if this six month period were to be charged to the state, the total delay attributable to the state would be considerably less than one year. Under these circumstances, we hold that the delay in bringing O'Neill to trial was reasonable and that O'Neill's right to a speedy trial was not violated.

O'Neill next challenges the trial court's decision to admit his confession into evidence at trial. He claims that the confession was not voluntarily given because the investigating detective promised him that he would not face habitual offender sentence enhancement if he confessed.

■ Before a trial court may admit a confession into evidence, the state must prove beyond a reasonable doubt that the defendant knowingly and intelligently waived his right to have an attorney and his right not to incriminate himself. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1092; *Collins v. State* (1987), Ind., 509 N.E.2d 827, 830. The trial court may not admit into evidence a confession which was procured by means of threats, physical

abuse, or promises of lenient treatment. *Smith v. State* (1989), Ind., 543 N.E.2d 634, 637; *See also Collins*, 509 N.E.2d at 830. When we review the trial court's determination that a confession was voluntarily given, we consider any uncontroverted evidence presented by the defendant, but where there is a conflict in the evidence we are bound to view only that evidence which supports the trial court's determination that the confession was given voluntarily. *Smith*, 543 N.E.2d at 637. If there is substantial evidence that the defendant gave the confession voluntarily, we will affirm.

Here, O'Neill claims that the detective who took his confession promised to intervene with the prosecutor to insure that no habitual offender sentence enhancement would be filed if O'Neill confessed to the robbery. He admits that he signed a waiver of rights form in which he acknowledged that the police had made no promises to him, but he claims that he did so only after the investigating detective assured him that the waiver was a mere formality. O'Neill further claims that he signalled the detective to stop the tape recording of the oral statement specifically so that he could ask about the representation that no promises had been made, that the detective did stop the tape and repeat his assurances that the waiver was a formality, and that the audio tape contains an audible "click" at the point where the detective stopped the tape. Finally, he claims that the tape recorded statement lasted only eleven minutes while the detective, on the tape, gave starting and finishing times which were thirteen minutes apart, and he asserts that this proves that the tape was stopped for nearly two minutes.

■ At the suppression hearing, the investigating detective acknowledged that he had discussed habitual offender enhancement with O'Neill, but he denied that he had ever promised O'Neill that no habitual offender enhancement would be filed if O'Neill confessed. The state acknowledges that there might be a clicking sound on the tape, but denies that such a sound leads inescapably to the conclusion that the tape

was stopped so that the investigating detective could reiterate a promise to O'Neill.

The evidence is obviously in conflict, and there is substantial evidence supporting the trial court's conclusion that O'Neill voluntarily confessed to these robberies. Given our standard of review of trial court rulings on the voluntariness of confessions, we must affirm the trial court.

■ O'Neill next argues that the trial court erred when it admitted into evidence state's group exhibit 11, which consisted of documents pertaining to prior felonies, during the habitual offender phase of the trial. The first page of the exhibit is a sealed and notarized official certification of records from the department of corrections which states that certain attached documents are true and correct copies of criminal records of Thomas O'Neill, no. 860265. The certification states that five documents were attached: 1) a corrected abstract of judgment from cause no. CR85–9B; 2) an abstract of judgment from cause no. CR81–212C; 3) an abstract of judgment from cause no. CR85–9B; 4) a fingerprint card dated 1–23–86; and 5) a photo dated 1–23–86. O'Neill asserts that the listed documents were inadmissible because they had been detached from the certification sometime before trial.

The abstracts of judgment admitted as part of exhibit 11 bear the same cause numbers as listed in the certification. The finger print card and photo bear the same department of corrections prisoner identification number that appears on the certification. When the included documents have numbers identical to those listed on the certification page, and the certification asserts that the attached documents are true and accurate copies, the attached documents are properly certified and admissible in evidence. *Allen v. State* (1988), Ind., 518 N.E.2d 800, 803–804. Here, the fact that the documents were unstapled at some point in time does not render them excludable. They are the the documents identified in the certification, and there are no facts to suggest either that they are not the same documents or that they had been tampered with in some way. Because the

documents were sufficiently certified, the trial court committed no error in admitting them into evidence.

O'Neill's final argument stems from the dispute concerning exhibit 11. When O'Neill's counsel objected to a portion of the exhibit on the certification grounds discussed above, the trial court sent both the deputy prosecutor and the defense counsel to the court's records department in order to examine the original documents. When they returned, the trial court had O'Neill's counsel sworn in and questioned as to the authenticity of the documents. O'Neill argues that the trial court violated his sixth amendment right to counsel by making his attorney testify.

We hold that the trial court's actions do not constitute reversible error under the facts of this case. It is not *per se* reversible error under the sixth amendment for a trial court to swear in a defendant's counsel and require testimony on some point if the testimony does not materially interfere with counsel's role as an advocate. *Strong v. State* (1989), Ind., 538 N.E.2d 924, 926. Here, O'Neill's counsel was only required to testify as to the authenticity of some documents. We have determined above that these documents were properly certified and thus admissible. Thus, O'Neill's counsel's testimony did not prejudice him in any way. We certainly do not find that it constituted a material interference with his representation of O'Neill. While we would not encourage trial courts to require testimony of defense counsel, we do not find reversible error here.

We cannot accept the dissent's view that defendant was deprived of counsel. Defendant's counsel had consistently demonstrated that he was not of the potted palm variety. He was in a position to object to the process and any question, had he desired to do so. In fact, the record suggests that he was the one to initiate the idea of him testifying upon returning from the examination of the original records.

Because we have found no error, we affirm.

AFFIRMED.

CONOVER, J., concurs.

BARTEAU, J., concurs in part and dissents in part with opinion.

BARTEAU, Judge, concurring in part and dissenting in part.

I respectfully dissent from the holding on assistance of counsel.

The majority cites but one authority, *Strong v. State* (1989), Ind., 538 N.E.2d 924, 926, from which we learn that "[m]erely requiring a defendant's lawyer to testify does not alone constitute a material interference with his function as an advocate." Therefore in *Strong* there was no error in the following procedure: a child witness was interviewed by the defense during pretrial; the interview was recorded and transcribed, and a copy of the transcript given to the prosecutor; at trial, during a hearing outside the presence of the jury on the competency of the child to testify, after the defense cross-examined the child (and presumably pointed out discrepancies between the testimony and statements from the interview), the prosecutor wanted to play the recording of the interview (presumably to rehabilitate the child-witness); however, the tape was unavailable, so the judge permitted the State to call to the stand defendant's lead counsel, and then required counsel to read from the transcript. The holding of no error limits itself to those "particular circumstances," and points out that "[a]t all times during [lead counsel's] testimony, co-counsel ... remained and actively served as trial counsel for the defendant." *Id.*

The majority relies only obliquely on *Strong,* and rightly so, because what happened there is a far cry from what happened here. In O'Neill's case, defense counsel left the courtroom and went with the prosecutor at the judge's order to the clerk's office, to find an original document and then compare it against a photocopy the prosecutor wanted in evidence as proof of a prior felony. This photocopy had been proffered as one of five documents that had been assembled, along with a clerk's

Ind.Trial Rule 44 certification, into a six-part exhibit. Counsel objected because the prosecutor had disassembled the exhibit at some point before trial. Initially the judge overruled the objection, and the State presented a not atypical habitual offender case; documentary evidence combined with fingerprint verification testimony. When the State rested, the defense requested and received rehearing on the objection.[1] It was after a conference covering twenty-three pages of transcript that the judge, expressing a desire for accuracy and for fairness to the defendant, ordered the adversaries to the clerk's office.

Upon their return, counsel took the stand and testified that the photocopy was an accurate copy. Granted, this took place outside the presence of the jury, as in *Strong*, but unlike that case, here O'Neill was left unrepresented when his counsel took the stand. This defendant was deprived not only of effective counsel, but of any counsel at all! No one was there to object to defense counsel's testimony, let alone his even testifying. No one was there to test him on cross.[2]

What happened here could be deemed either trial court error or ineffective assistance of counsel. Regardless of the label, in my view reversal is in order. But, my view not having carried the day, I see no need to analyze whether this aberrant procedure warrants reversal for dismissal, based on the double jeopardy bar and our holding the six-part exhibit inadmissible and the remainder of the State's proof insufficient, or, reversal for retrial. In any event, I find unacceptable the spectacle of a defense counsel becoming both an investigator for the State and its inculpating witness, while leaving his client totally unrepresented. I am unwilling to countenance such a departure from orthodox trial procedure, harmless or otherwise.[3]

1. To support the motion for rehearing, defense counsel cited *Eldridge v. State* (1977), 266 Ind. 134, 361 N.E.2d 155, *reh'g denied, cert. denied* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 and *Kelly v. State* (1990), Ind., 561 N.E.2d 771.

2. *Strong* supported its holding by reaching back to a 1975 case from California, *United States v. Freeman* (9th Cir.1975), 519 F.2d 67. In that case, when counsel testified, the trial judge appointed a defense counsel pro tempore.

3. Appellate counsel, citing among others *Perry v. Leeke* (1989), 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 argues that in cases of "state invasions of the lawyer-client relationship ... reversal is required without a consideration of what prejudice, if any, resulted from the invasion...." I note that *Perry* "intended to make clear that '[a]ctual or constructive denial of the assistance of counsel altogether' ... is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." 488 U.S. at 280–281, 109 S.Ct. at 600, 102 L.Ed.2d 624 (quoting *Strickland v. Washington* (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674).