ATTORNEYS FOR APPELLANTS

Robert W. Geddes   

Edward F. Harney, Jr.

Indianapolis, Indiana 

Robert W. Hammerle

Joseph M. Cleary

Indianapolis, Indiana

John C. Stark

Thomas A. Brodnik

Richard B. Kaufman

Indianapolis, Indiana

Duge Butler, Jr.

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Scott C. Newman  

Marion County Prosecuting Attorney

Lawrence J. Brodeur

Deputy Prosecuting Attorney

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

JAMES A. WURSTER, SAMUEL R. TURPIN, )

WILLIS R. CONNER,                     )

) Indiana Supreme Court

     Appellants (Defendants Below), ) Cause No. 49S02-9907-CR-404

) 

v. ) 

) Indiana Court of Appeals

STATE OF INDIANA, ) Cause No. 49A02-9802-CR-126

) 

Appellee (Plaintiff Below). ) 

­

APPEAL FROM THE MARION SUPERIOR COURT

The Honorable Cale Bradford, Judge

Cause Nos. 49G03-9704-CF-60445; 49G03-9704-CF-60442; and

49G03-9704-CF-60430

­

ON PETITION TO TRANSFER

July 28, 1999

BOEHM, Justice. 

This case raises a number of issues.  We summarily affirm the Court of Appeals under Appellate Rule 11(B)(3) as to all except three.  The issues summarily affirmed include the Court of Appeals’ dismissal of the indictments of former State Representative Samuel R. Turpin, James A. Wurster, and Willis R. Conner for bribery and of Wurster for unlawful lobbying.  We also summarily affirm the Court of Appeals’ ruling that the prosecution of Turpin on five counts of filing a fraudulent report may proceed.  

We hold today that (1) a prosecutor may not prevent grand jurors from directly questioning witnesses; (2) the requirement that a record be kept of grand jury proceedings applies to exchanges between the prosecutor and the grand jurors; and (3) submission of an allegedly perjurious affidavit to a BMV office in Hendricks County is not prosecutable in Marion County over the objection of the defendant, and accordingly Turpin’s perjury count must be transferred to Hendricks County.

The proceedings before the grand jury that issued the indictment in this case violated both the right of the grand jurors to question witnesses and the requirement that a complete record of the proceedings be kept.  As to the former, however, we find no showing of prejudice.  Failure to keep a record of the proceedings requires no showing of prejudice because, by its nature, it forecloses the defendant from knowing or being able to prove what occurred in the grand jury.  That error, however, was not presented to the trial court and is not available on appeal.  Accordingly, we reach the same disposition of this appeal as the Court of Appeals directed, except we order the perjury count transferred to Hendricks County.

Factual and Procedural Background

A full explanation of the facts related to this case appears in the Court of Appeals’ opinion.  
See
 
Wurster v. State
, 708 N.E.2d 587, 590-91 (Ind. Ct. App. 1999).  In short, a Marion County grand jury indicted Turpin on one count of bribery, five counts of filing a fraudulent report, and one count of perjury.  The same indictment also charged Wurster with one count of bribery and one count of unlawful lobbying and Conner with one count of bribery.  All three defendants filed motions to dismiss the indictment on several grounds.  The trial court denied the motions after a hearing, but granted the defendants’ request for certification for interlocutory appeal.  After accepting jurisdiction and consolidating the three separate appeals, the Court of Appeals ordered dismissal of all of the bribery counts and Wurster’s unlawful lobbying count, but affirmed the denial of the motion to dismiss the indictment in its entirety, as well as Turpin’s motion to dismiss the filing a fraudulent report counts and the perjury count.  
See
 
Wurster
, 708 N.E.2d at 599-600.  Both the State and Turpin petitioned for transfer.   

I. Grand Jury Proceedings

Turpin challenges the procedure used to interrogate witnesses before the grand jury, and argues that the indictment must be dismissed as the product of a fatally flawed proceeding for two reasons: (1) grand jurors were not permitted to ask direct questions of witnesses and (2) no record was kept of conversations between the prosecutor and grand jury about the questions to be asked.  At the hearing on the motion to dismiss the State stipulated that the grand jurors did not ask any direct questions of the witnesses.  The trial court then asked if the deputy prosecutor who presented the case to the grand jury had instructed the grand jurors that they could not ask questions.  The deputy responded:

No, Your Honor.  I did not.  I simply set up a procedure whereby witnesses were brought in.  I asked questions of the witnesses.  When I concluded with my questions, I sent the witnesses -- the witness outside the room and then discussed with the members of the Grand Jury if they had any further questions, areas they wanted to go over, or whatever with this particular witness.  If they did, . . . then I would bring that witness back in and there are several transcripts that have been turned over to defense in discovery which indicate the witness comes back in for further interrogation and I did ask the questions.

The record contains partial transcripts of testimony from several witnesses, some of whom were recalled for further questioning after the prosecutor apparently conferred with the grand jurors.
(footnote: 1)  No record was made of these dialogs between the prosecutor and the grand jury.  

The grand jury was at one time seen as a shield against abuse of prosecutorial discretion in selecting cases to be pursued to trial.  
See
 
generally
 1 
Charles A. Wright, Federal Practice and Procedure
 § 101 (1999).  Ideally, a grand jury serves as “an investigative body acting independently of either prosecuting attorney or judge, whose mission is to clear the innocent, no less than to bring to trial those who may be guilty.”  
United States v. Dionisio
, 410 U.S. 1, 16-17, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973) (internal quotation marks and citation omitted).  In modern times that function is often thought to have eroded to the point where a skilled prosecutor can secure an indictment in the great majority of circumstances.  
See
 
generally
 2 
Wayne R. LaFave & Jerold H. Israel
, 
Criminal Procedure
 §15.2(a) at 282-83 (1984).  

Indiana has reduced the role of the grand jury over time, consistent with Article VII, § 17 of our state constitution, which provides that “[t]he General Assembly may modify, or abolish, the grand jury system.” 
See
 
generally
 16A 
William A. Kerr, Indiana Practice
  §9.1.
(footnote: 2)  Today, consistent with the federal and state constitutions and Indiana’s statutes, an Indiana prosecutor can charge a defendant by information rather than indictment by grand jury, and bypass the grand jury process altogether.  
See
 
Ind. Code 
§ 35-34-1-1(a) (1998) (“Any crime may be charged by indictment or information.”). 

Despite the considerable power of the prosecutor in a modern grand jury proceeding, the role of the grand jury is nonetheless an important and meaningful one if an indictment is to be pursued.  In Indiana, the voters of each county
(footnote: 3) elect a prosecutor every four years.  Once elected, these officials acquire the awesome power to bring any citizen into court to face criminal charges.  This may be done by information or by indictment, subject only to the procedural checks built into each process.  If an information is used, the prosecutor alone bears responsibility for the decision to charge the defendant.  If the prosecutor chooses to proceed via grand jury indictment, the grand jury shares that responsibility.  In either case, the prosecutor must abide by both constitutional restrictions and the statutory requirements imposed by the General Assembly in the interest of both fairness to the defendant and accountability and reviewability of the process.

A. 
The Constitutional Claim

Turpin argues that the failure of the prosecutor to allow direct questioning of witnesses by the grand jurors constitutes prosecutorial misconduct and accordingly violates his right to due process.  
See
 
U.S. Const.
 amend. 14.
(footnote: 4)  Although the Fifth Amendment to the federal constitution precludes prosecution for a “capital or otherwise infamous crime” without grand jury action, neither that amendment nor Fourteenth Amendment due process requires a state system to include grand jury proceedings.  
See
 
Hurtado v. California
, 110 U.S. 516, 4 S. Ct. 292, 28 L. Ed. 232 (1884).  Nevertheless, when prosecutors elect to pursue an indictment before a grand jury, they must comply with the requirement of due process and the statutory requirements governing grand jury proceedings.  As put in an oft quoted footnote, “[t]he fact that there is no constitutional requirement that States institute prosecutions by means of an indictment returned by a grand jury does not relieve those States that do employ grand juries from complying with the commands of the Fourteenth Amendment in the operation of those juries.” 
Rose v. Mitchell
, 443 U.S. 545, 557 n.7, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979) (citation omitted). 

Although, as explained in Part B, the statutes contemplate grand jurors questioning witnesses without a prosecutorial filter, not every failure to observe a rule or statute constitutes a denial of constitutional due process.  
See
, 
e.g.
, 
Willey v. State
, ___ N.E.2d ___, ___ & n.6 (Ind. 1999), 1999 WL 398967 at *8.  The procedure here of having grand jurors submit their questions to the prosecutor to have him pose the questions to the witnesses does not violate due process as prosecutorial misconduct.  As the Court of Appeals correctly observed, “[o]nly in cases in which there is such ‘flagrant imposition of the grand jurors’ will or independent judgment’ will the court find a violation of due process.”  
Wurster
, 708 N.E.2d at 592 (quoting 
Averhart v. State
, 470 N.E.2d 666, 679 (Ind. 1984)).  There was no showing of “flagrant imposition” here, but because there was no record kept, we can only speculate as to the degree, if any, of imposition of will or impairment of independent judgment that occurred.     

B. 
The Statutory Claims

Turpin also attacks the indictment on the ground that it was issued in violation of Indiana laws regulating grand juries.  The functions of a grand jury in Indiana are purely statutory, and grand juries have “no rights or privileges based upon the common law.” 
Coons v. State
, 191 Ind. 580, 589, 134 N.E. 194, 197 (1922).  If an issue arises that is not expressly governed by statute, a grand jury’s statutory functions may be interpreted with reference to common law principles, 
see
 
State ex rel. Reichert v. Youngblood
, 225 Ind. 129, 140-42, 73 N.E.2d 174, 177 (1947), but the grand jury has no authority to take any action not authorized by statute.  
Coons
, 191 Ind. at 588-89, 134 N.E. at 196-97; 
see
 
also
 
Kerr,
 
supra
 § 9.2(a) at 33.  “Despite this clear recognition of the General Assembly’s authority to determine the functions and responsibilities of a grand jury, the General Assembly has not enacted a clear statement of a grand jury’s functions and responsibilities.”  
Kerr,
 
supra
 § 9.2(a) at 33.  There are, however, some important provisions relevant to Turpin’s claims.

1. 
Precluding Direct Questions by the Grand Jury

Indiana statutes provide that a “grand jury shall hear and examine evidence concerning crimes and shall take action with respect to this evidence as provided by law.”  
Ind. Code
 § 35-34-2-2(a) (1998).  No statutory provision specifically addresses the ability of grand jurors personally to question witnesses called before them.
(footnote: 5)  However, the oath administered to grand jurors provides that they “diligently inquire . . . of all offenses committed or triable within this county, of which you have or can obtain legal evidence . . . .” 
See
 
id.
 § 35-34-2-3(e).
(footnote: 6)  The statute also provides that “[t]he grand jury shall be the exclusive judge of the facts with respect to any matter before it.”  
Id.
 § 35-34-2-4(j).  Although the statute is ambiguous on the point of whether grand jurors must be permitted to ask questions directly of witnesses, our decisional law has recognized the importance of allowing questioning for at least a century.  
See
 
State v. Turley
, 153 Ind. 345, 347, 55 N.E. 30, 30 (1899) (“The duty of the grand jury is to ‘diligently inquire,’ to obtain ‘legal evidence’, to discover and detect crime, and for that purpose they have the right to interrogate witnesses concerning all matters which may tend to accomplish that result.”).  In the face of this longstanding understanding of the role of grand jurors, the statutory oath relied upon in 
Turley
 has remained essentially unchanged for a century.  
See
 
1 Revised Statutes
 § 1652 (1881).  And the usual practice in Indiana, as we understand it, is to allow grand jurors to pose questions directly to witnesses that appear before them.  We believe this to be the better practice, and also, in light of this history, required by the statute.  The State argues that, even if direct questioning is required, no prejudice has been shown by the procedure adopted here.  We agree that immaterial irregularities are not a basis for dismissal of an indictment.  On this record, the effect, if any, of this failure to follow conventional procedure is impossible to evaluate, and we cannot conclude that it constituted any significant interference with the grand jury’s role.  It is speculative what the record, if there were one, would reveal of the exchanges between the prosecutor and the grand jurors, and even more speculative how prejudice might be shown.  In any event, in the absence of any such showing, this alleged statutory violation does not present a basis for dismissal of the indictment.  
Cf.
 
State v. Bitz
, 487 N.W.2d 533, 535 (Minn. Ct. App. 1992) (“irregular appointment of a grand jury foreperson and clerk does not warrant application of a per se rule of dismissal”). 

2. 
Failure to Record the Proceedings

Turpin also seeks reversal based on Indiana Code § 35-34-2-3(d),
(footnote: 7) which provides in relevant part:

The court shall supply a means for recording the evidence presented before the grand jury and all of the other proceedings that occur before the grand jury, except for the deliberations and voting of the grand jury and other discussions when the members of the grand jury are the only persons present in the grand jury room.  The evidence and proceedings shall be recorded in the same manner as evidence and proceedings are recorded in the court that impaneled the grand jury. . . .

The manner of recording evidence in trial courts is governed by Criminal Rule 5, which provides for the recording or stenographic reporting “of any and all oral evidence and testimony given in all cases and hearings, including both questions and answers, all rulings of the judge in respect to the admission and rejection of evidence and objections thereto, and any other oral matters occurring during the hearing in any proceeding.”  

Accepting at face value the prosecutor’s account of the procedures followed in the grand jury, we agree with Turpin that this statute was violated by the prosecutor’s discussion of potential questions with the grand jurors off the record before recalling witnesses to pose questions himself.  The State again argues that Turpin has shown no prejudice from this error.  We do not agree that a showing of prejudice is required for a failure to keep a record to warrant dismissal.  Indiana Code § 35-34-1-7 provides that “[a]n indictment shall be dismissed upon motion when the grand jury proceeding which resulted in the indictment was conducted in violation of IC 35-34-2.”  We agree that this does not require dismissal for immaterial irregularities.  Here, however, because there are no transcripts of the conversations between the prosecutor and grand jurors, Turpin is foreclosed from establishing prejudice.  This focuses the major problem with this procedure: the error itself renders it impossible for a reviewing court to evaluate what, if any, interference with or domination of the grand jurors occurred. 

A prosecutor exerts considerable control over a grand jury.  Statistics show that grand juries issue “no-bills” in only a very small percentage of cases presented to them. 
See
 
LaFave & Israel
, 
supra
 §15.2 at 283.  Some suggest this shows “an almost compete lack of grand jury independence.”  
Id.
  The legislature’s requirement that a record be kept of grand jury proceedings can only be designed to serve as an important check on the potential of prosecutorial abuse of the grand jury process.  Moreover, the Code requires that transcripts of a witness’s testimony be disclosed to a defendant upon court order after a showing of particularized need.  
Ind. Code
 § 35-34-2-10(b) (1998).  In Marion County transcripts of the “testimony of persons who the prosecuting attorney intends to call as witnesses at the hearing or trial” must be disclosed to a defendant in the normal course of automatic discovery.  
See
 Rules of Organization and Procedure of the Marion Superior Court, Criminal Division, Rule 7(2)(a)(3).  Although there may be immaterial violations of the statute, failure to record the proceedings to permit evaluation of what occurred is not one of them.  Unlike the interposition of the prosecutor between the grand jury and the witnesses, the failure to keep a record cannot be defended on the basis that no prejudice is shown. 

Despite the violation of Indiana Code § 35-34-2-3(d), reversal is not appropriate in this case.  Turpin sought dismissal in the trial court on the ground that the grand jury proceedings were “fatally defective” because “the Grand Jurors in this case were forbidden to participate in the interrogation of witnesses . . . .”  He further contended that the State’s actions “amounted to prosecutorial misconduct” because the grand jury was unable to serve its proper function of examining evidence, unable to serve its oath to diligently inquire, and unable to serve as the exclusive judge of the facts.
(footnote: 8)  It was not until his petition to transfer that Turpin argued for reversal under Indiana Code § 35-34-2-3(d), which was not cited to the trial court.
(footnote: 9)
 It is well settled that a party may not raise one ground before the trial court and a different ground on appeal.  
See
, 
e.g.
, 
Malone v. State
, 700 N.E.2d 780, 784 (Ind. 1998); 
Willsey v. State
, 698 N.E.2d 784, 793 (Ind. 1998).  “The changing of theories is substantially indistinguishable from having never raised the issue in the first instance.”  4A 
Kenneth M. Stroud, Indiana Practice
 § 3.2 at 33 (1990).  We can only speculate as to how this case would have unfolded if the statutory violation had been presented to the trial court.  In this case, the trial court and Court of Appeals properly found no error on the grounds argued before them.  The new grounds advanced in the petition for transfer do not warrant reversal at this stage.

II. Venue for the Perjury Count

Count eleven of the Grand Jury’s indictment charged Turpin with the offense of perjury.  Turpin contends that this charge must be dismissed or transferred to Hendricks County because Marion County is not the proper county of venue.

A. 
Venue May be Challenged in a Pretrial Motion

The State contends that “proper venue is a matter of proof at trial.”  Indeed, the State must prove venue by a preponderance of the evidence at trial, and circumstantial evidence may be sufficient to establish proper venue.  
Evans v. State
, 571 N.E.2d 1231, 1233 (Ind. 1991); 
Boze v. State
, 514 N.E.2d 275, 278 (Ind. 1987).  In its brief to the Court of Appeals, the State requested “that it be allowed to attempt such proof at trial and that Turpin not be allowed to attack the sufficiency of evidence supporting a charge through a motion to dismiss.”  The Court of Appeals essentially accepted the State’s invitation.  It did not address the merits of Turpin’s venue argument, but instead took a wait-and-see approach: “If there is a failure of proof on venue at the close of the State’s case-in-chief, Turpin is entitled to move for a judgment on the evidence pursuant to Ind. Trial Rule 50.”  
Wurster
, 708 N.E.2d at 599.
(footnote: 10)  To the extent that this language suggests that venue may not be challenged in a pretrial motion, it is contrary to statute, decisional law, and concerns of fairness and judicial economy, and we do not agree.

According to statute, “[w]hen it appears, at any time before verdict or finding, that the prosecution was brought in an improper county, the court shall order that all papers and proceedings be certified and transferred to a court with jurisdiction over the offense in the proper county . . . .”  
Ind. Code
 § 35-32-2-5(a) (1998).  The statute explicitly permits a challenge to the venue of a prosecution “at any time before verdict . . .” which plainly includes a pretrial motion.  
Cf.
 
Crowder v. State
, 398 N.E.2d 1352, 1356 (Ind. Ct. App. 1980) (observing that the “statute places no burden upon the defendant in a criminal case to move for transfer for improper venue, but rather places the duty upon the court to cause the transfer.”).  Indeed, 
State v. Moles
, 166 Ind. App. 632, 337 N.E.2d 543 (1975), on which the State relies for its argument on the merits of this issue, was a case in which venue was transferred from Marion County to Lake County based on a pretrial venue challenge.  Although this transfer was found to be improper on appeal because the offenses were committed in Marion County, the Court of Appeals did not there, as it does here, suggest that the challenge to venue was premature or otherwise not properly raised before trial.  Moreover, in 
Kindred v. State
, 540 N.E.2d 1161, 1166 (Ind. 1989), this Court observed that a pretrial motion challenging venue is proper.  However, the proper motion is a motion to transfer rather than a motion to dismiss.  
Id.
(footnote: 11)  Finally, concerns for judicial economy and fairness dictate that defendants should be permitted to challenge venue in a pretrial motion.  In many cases there will be only one county of proper venue for all counts.  Here, the result may be to multiply litigation because Turpin is charged with other counts that are properly venued in Marion County.  The statute, indeed the Constitution, gives him the right to demand a transfer of the improperly venued count.  
See
 
Ind. Const.
 art. I, § 13; 
Ind. Code
 § 35-32-2-1(a) (1998).  If the result is the considerable financial and emotional expense of a second trial, that is his choice.  In the vast majority of cases, a challenge to venue at an early stage will serve not only the interests of the parties but also those of judicial economy.

B. 
Venue for a False BMV Affidavit

The question remains whether Turpin’s pretrial challenge to venue was properly denied on the facts of his case.  The perjury count of the grand jury’s indictment reads as follows:

On or about October 21, 1994, Samuel R. Turpin did make a false material statement under oath or affirmation, by submitting an affidavit to the Indiana Bureau of Motor Vehicles, for processing at a Bureau of Motor Vehicles center in Marion County, Indiana, which affidavit was under oath or affirmation subject to penalties for perjury, and in such affidavit Samuel R. Turpin stated that the actual purchase date for a vehicle was October 21, 1994, when Samuel R. Turpin knew that such statement was false in that the actual purchase date for such vehicle was May 30, 1994.

Although the allegedly perjurious affidavit is not in the record before us, the parties stipulated that the allegedly perjurious affidavit was submitted to a Bureau of Motor Vehicles branch office in Hendricks County.

Article I, Section 13 of the Indiana Constitution provides in relevant part that an accused shall have a right to a public trial “in the county in which the offense shall have been committed . . . .”  This principle is also embodied in statute: “Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law.”  
Ind. Code 
§ 35-32-2-1(a)(1998).  Although the term “commit” is not defined by statute, its plain and ordinary meaning is “to carry into action deliberately : perpetrate . . . .”  
Merriam-Webster’s Collegiate Dictionary
 231 (10th ed. 1993); 
see
 
also
 
Black’s Law Dictionary
 273 (6th ed. 1990) (defining “commit” as “[t]o perpetrate, as a crime”).  Perjury is defined by statute as: “A person who: (1) makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true . . . .”  
Ind. Code
 § 35-44-2-1 (1998).  The question of venue accordingly turns on the county in which Turpin allegedly made a false material statement.  The State concedes that this statement was made in an affidavit for a title transfer that was submitted to a BMV office in Hendricks County.  According to the State, however, a representative of the BMV 

testified before the Marion County Grand Jury that the documents submitted by the Defendant in Hendricks County had no effect until those documents were transmitted and received by the Indiana Bureau of Motor Vehicles office in Marion County. . . . The representative . . . testif[ied] that the actual transfer of title to the motor vehicle would 
not
 occur until the transfer papers were prepared at the office of the Indiana Bureau of Motor Vehicles in Marion County.  The branch office . . . in Hendricks County only had the authority to transmit the papers submitted by the Defendant to the office in Marion County.

Accordingly, the Marion County grand jury charged Turpin with perjury because this affidavit was submitted “for processing at a Bureau of Motor Vehicles center in Marion County, Indiana . . . .”  

The State argued in the trial court that “the crime of perjury for submitting a false affidavit to the Indiana Bureau of Motor Vehicles occurs when that affidavit is filed in the office of the Indiana Bureau of Motor Vehicles in Marion County, Indiana.”  It relied on 
State v. Moles
, 166 Ind. App. 632, 337 N.E.2d 543 (1975) to support this contention.  In 
Moles
, the Court of Appeals considered the proper venue for charges of making false tax returns.  
Id.
 at 634-35, 337 N.E.2d at 545.  The defendants argued that the alleged offenses were committed where the tax returns were prepared (Lake County).  The State, however, contended that the offenses were committed where the tax returns were filed (Marion County).  
Id.
 at 637-38, 337 N.E.2d at 547.  Relying on a number of federal cases, the Court of Appeals held that “a taxpayer does not ‘make’ a tax return until the return is filed with the Department of Revenue.”  
Id.
 at 639, 337 N.E.2d at 548.  Accordingly, the only proper venue for the offenses was held to be Marion County.

The submission of an affidavit to a county BMV office is not the same as the filing of a tax return in 
Moles
.  Taxpayers are required to mail their returns to Indianapolis rather than taking them to a county or regional office of the Department of Revenue.  The taxpayer takes the positive action of mailing a return to Marion County, necessarily knows that the return is going to Marion County by virtue of the address on the envelope, and launches the return for an inexorable landing in Marion County.  In this respect the tax return is analogous to firing a gun across a county line.  The offense is committed in both the county where the shooting starts and the county where the victim is hit.  Here, according to the limited facts on this record, Turpin filed an affidavit with a Hendricks County branch office of the Bureau of Motor Vehicles.  There is no suggestion that Turpin knew, or for that matter that any other defendant would know, that this affidavit would ultimately be processed in Marion County.  Unlike the taxpayers in 
Moles
, Turpin took no action directed at Marion County. 

The BMV’s administrative decision to allow individuals to submit affidavits to county BMV branches for ultimate processing in Indianapolis in no way relates to the alleged perjury committed by Turpin, nor should it subject Turpin, or any other similarly situated defendant, to a prosecution in Marion County for filing an affidavit with a BMV office in any of the ninety-one other Indiana counties. Turpin suggests, correctly in our view, that under the State’s logic the Marion County prosecutor would be empowered to function as a “super-prosecutor” for the entire state.  Hoosiers in Lake and Stueben counties may find unattractive the potential application of the State’s argument.  If the BMV decided to move its processing center to Posey County, the Posey County prosecutor could then prosecute individuals statewide who are charged with submitting false affidavits to their county BMV offices.  For the reasons stated above, we decline to extend to the Marion County prosecutor the authority to prosecute individuals alleged to have submitted perjurious affidavits to BMV offices in counties other than Marion.

The State also points to Indiana Code § 35-32-2-1(d), which provides “[i]f an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense.”  The Court of Appeals similarly observed that “[i]f the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties.”  
Wurster
, 708 N.E.2d at 599 (citing 
Andrews v. State
, 529 N.E.2d 360, 363 (Ind. Ct. App. 1988)).  As explained above, the allegedly perjurious statement was submitted to a BMV office in Hendricks County.  Turpin is not alleged to have done anything in Marion County.  Rather, the BMV merely sent Turpin’s affidavit there for processing.  There is no basis for venue in Marion County. 

Conclusion

We summarily affirm the Court of Appeals on the following issues: (1) the sufficiency of the indictments for bribery, (2) the dismissal of the unlawful lobbying count against Wurster, and (3) the filing of fraudulent report counts against Turpin.  Ind. Appellate Rule 11(B)(3). Accordingly, the trial court’s denial of the defendants’ motions to dismiss is affirmed in part and reversed in part.  The trial court’s denial of the defendants’ motions to dismiss the indictment in its entirety and Turpin’s motion to dismiss the five counts of filing a fraudulent report is affirmed.  This case is remanded with instructions to dismiss the bribery counts against all three defendants, the unlawful lobbying count against Wurster, and to transfer the perjury count against Turpin to Hendricks County.  

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

FOOTNOTES
1: At one point the prosecutor asked a grand juror on the record if his follow-up questioning of a witness was adequate.  “Before you [the witness] step out of the room, does that help you [the grand jury] on your questions about the banquet?  (NO VERBAL RESPONSE) Anything else, we can just . . . you [the prosecutor] hate to set a man up and down all the time, you know.  It appears that we have concluded then.  There’s no further questions and we can go off the record.”

2: The Indiana experience is consistent with the national trend.  “Over the years, the number of states allowing felony prosecutions to be brought by information (usually only after a preliminary hearing bindover) has grown steadily.”  
See
 
generally
 
LaFave & Israel
, 
supra
 at
 §15.1(b).  

3: In eighty-eight of the counties, the judicial circuit that elects the prosecutor is the county.  Two of the judicial circuits are composed of two counties each.

4: Although a “due course of law” argument was mentioned in the trial court, no state constitutional argument was raised in the Court of Appeals.  The failure to cite that provision and develop a separate analysis based on the Indiana Constitution waives any claim. 
Valentin v. State
, 688 N.E.2d 412 (Ind. 1997).  

5: Other state statutes are explicit on this point.  
See
, 
e.g.
, 725 
Ill. Comp. Stat.
 5/112-4(b) (West 1992) (“The Grand Jury has the right to subpoena and question any person against whom the State’s Attorney is seeking a Bill of Indictment, or any other person . . . . [T]he State’s Attorney shall inform the Grand Jury of these rights.”).

6: Grand jurors also have the independent authority to report criminal allegations to fellow jurors “who may then investigate the alleged offense.”  
Id.
 § 35-34-2-3(g).  A grand jury has the power to require witnesses to appear at its proceedings through the issuance of a subpoena.  
Id.
 § 35-34-2-5(a).  If the grand jury subpoenas a witness, one would expect that grand jurors, rather than the prosecutor, would be much better suited to ask questions directly rather than through the filter of a prosecutor who saw no need to subpoena the witness.

7: This provision has been made increasingly more explicit over time.  
See
 
generally
 
Kerr, 
supra
 § 9.5(h)(1).

8: At the hearing on the motion to dismiss, Turpin argued that the grand jury procedure amounted to prosecutorial misconduct because it prevented grand jurors from asking questions of witnesses.  Turpin added that “the Prosecutor’s Office has intentionally conducted this Grand Jury in a manner that nobody has any idea what, if any, questions the Grand Jury had.”  Three weeks after the hearing, Turpin filed a supplemental memorandum in support of his motion to dismiss in which he reiterated that forcing grand jurors “to submit their questions to the State in off the record proceedings where no one knows what was said is a complete denial of Mr. Turpin’s rights to due process and due course of law.”  He concluded that the proceeding was “constitutionally unfair and this indictment must be dismissed.”  These same basic arguments were advanced in Turpin’s brief filed in the Court of Appeals.   

9: Turpin’s oral argument in the Court of Appeals was not recorded.  However, it is clear that the statute relied on in Turpin’s petition to transfer was not argued as a basis for reversal to the trial court or in Turpin’s principal brief or reply brief in the Court of Appeals.  Its first mention in the paper record before us is as a submission of additional authority filed two days after oral argument in the Court of Appeals.

10: The Court of Appeals’ opinion also engaged in an explanation of the concept of material variance.  The cases relied upon, however, deal with challenges to an indictment or information raised on appeal after conviction.  
See
 
McCallister v. State
, 217 Ind. 65, 26 N.E.2d 391 (1940); 
Carlisle v. State
, 32 Ind. 55 (1869).  Here, the propriety of venue was challenged in a pretrial motion which was certified for interlocutory appeal and was properly preserved for review on its merits.  Moreover, Turpin’s challenge was not that the State failed to “allege[] venue with sufficient particularity,” 
see
 
Wurster
, 708 N.E.2d at 599, but was rather that he committed no acts to support venue for the perjury charge in Marion County.  The Court of Appeals did not address that issue. 

11: In the trial court Turpin initially sought dismissal of the perjury count.  The State responded that, if the trial court found venue in Marion County to be improper, transfer to Hendricks County -- and not dismissal -- was the appropriate remedy.  Turpin’s supplemental memorandum in support of his motion to dismiss then sought to have the charge “venued to Hendricks County.”  In his brief to the Court of Appeals, Turpin sought dismissal or remand to the trial court with instructions to transfer the perjury count to Hendricks County.