FILED

Dec 06 2019, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

James H. Voyles, Jr.
Jennifer M. Lukemeyer
Tyler D. Helmond
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Stephen R. Creason
Chief Counsel of Appeals
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Daniel Tanoos,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 6, 2019

Court of Appeals Case No.
19A-CR-1086

Appeal from the
Marion Superior Court

The Honorable Lisa F. Borges,
Judge

Trial Court Cause No.
49G04-1809-FC-32385

**Altice, Judge.**

## Case Summary

[1] Former Superintendent of the Vigo County School Corporation (VCSC) Daniel Tanoos was charged with three counts of bribery regarding his solicitation and acceptance of meals, tickets, and other items from a vendor that repeatedly

contracted with and provided energy solutions to VCSC. The trial court denied Tanoos's motion to dismiss the charges, and Tanoos appeals, asserting that the trial court abused its discretion when it failed to dismiss the charges because the facts alleged do not constitute the offense of bribery.

We affirm.

## Facts & Procedural History

Tanoos began as Superintendent with VCSC in 1999 or 2000 and retired in 2018. Energy Systems Group (ESG) is a state-certified guaranteed energy savings contractor (GESC) headquartered in Indiana and with offices in Indianapolis, that develops and provides energy solutions to governmental bodies to reduce energy and operating costs under Ind. Code Chapter 36-1-12.5.[1] ESG provides clients with such things as upgraded lighting and HVAC at no added cost to the client, as energy savings are used to pay for the investment over a period of years. At times relevant to this action, Doug Tischbein was the corporate director of ESG, and he was in charge of the VCSC account beginning in either 2006 or as early as 2003. Between 2000 and 2016, VCSC entered into nine contracts with ESG worth more than $42 million.

---

[1] Ind. Code 36-1-12.5 provides for the administration of GESC contracts. By statute, the governing body, here a school corporation, is required to publish notice that it is receiving proposals of conservation measures from GESCs through a process called Request for Qualifications, to which GESCs would respond. The governing body is not required to bid out the job or award it to the lowest bidder.

[4] On September 24, 2018, Indianapolis Metropolitan Police Department Detective Tara Asher, who was assigned to the Marion County Prosecutor's Grand Jury Unit, filed a 24-page probable cause affidavit (the PCA) averring that, in August 2018, she received information from FBI Special Agent Joann Dowell that the FBI had been investigating Tanoos based on information that the FBI had received from Indiana's State Board of Accounts (SBOA) regarding concerns of improper awarding of contracts by VCSC to ESG. Based on the information that the FBI received from the SBOA, the FBI opened a public corruption investigation in February 2016. FBI agents executed search warrants at several VCSC locations, collecting digital and documentary evidence related to ESG's relationship with VCSC, and in particular, Tanoos's relationship with ESG and Tischbein. The FBI investigation included information received from an FBI confidential source with access to VCSC contracts and the contracting process. The investigation also included interviews with various VCSC personnel, school board members, and ESG personnel, including Tischbein. ESG expense reports and emails were provided pursuant to subpoena.

[5] Persons interviewed indicated that Tanoos always recommended ESG to the school board as the GESC for renovations throughout the district and that other competitors quit responding to published Request for Qualifications. The PCA reflected that Tanoos continued to receive tickets and meals and the like at times when ESG did not have a contract with VCSC, with Tischbein explaining to his superiors that there were upcoming planned VCSC school renovations,

that Tanoos "is loyal to us" and "a certain level of investment into maintaining that relationship is vital." *Appellant's Appendix Vol. II* at 29. Both Tanoos and Tischbein denied in interviews that Tanoos solicited or expected Tischbein to buy things in exchange for Tanoos's recommendation of ESG to the school board.

[6] According to ESG records obtained in the investigation, Tischbein expensed more than $18,000 between the years of 2006 and 2016 for meals, events, and miscellaneous items, and that amount did not include company-owned season tickets to sporting events or items paid personally by Tischbein. In the same time period, ESG made more than $83,000 in donations related to the VCSC account. Detective Asher summarized in the PCA, "Evidence obtained through the investigation showed that Tischbein and ESG routinely provided benefits and perks to Tanoos and VCSC school board members in an effort to continue receiving work from VCSC" and, "[o]ver time, Tanoos began soliciting such perks of his own accord, sometimes pairing the request with information about ESG competitors or while otherwise offering support to ESG." *Id.* at 20.

[7] Detective Asher found the following instances "of greatest concern":

> 1. The August 24, 2013 dinner at Mo's Steakhouse . . . and Colts game for Tanoos and friends and family. The dinner was paid for by ESG at Tanoos' request without ESG employees present. Tanoos solicited the Colts' [sic] tickets immediately following Tischbein asking him if he knew another county's school superintendent for an opportunity to do a project there;

2. The July 11, 2014 dinner at Palm Restaurant, Nashville. Tanoos solicited this dinner immediately after making Tischbein privy to a competitor's solicitation of VCSC. The dinner cost over $1000 and neither Tischbein nor any other ESG employees attended. Notably, Tischbein did not expense this dinner as a business expense;

3. The August 10, 2014 REO Speedwagon concert. Tanoos directly solicited tickets for this concert which included a limousine ride and complimentary liquor near the end of the Phase 8 contract.

*Id*. at 42.

[8] On September 24, 2018, the State filed an information against Tanoos alleging three counts of bribery, Count I as a Class C felony and Counts II and III as Level 5 felonies:

COUNT I: DANIEL TANOOS, on or about August 24, 2013, did solicit, accept, or agree to accept any property, that is: food and/or beverages, except property the person is authorized by law to accept, with intent to control the performance of an act, that is: recommendation to award contract and/or continued business with ESG to the Vigo County School Board related to the employment or function of a public servant, that is: Superintendent of Vigo County School Corporation;

COUNT II: DANIEL TANOOS, on or about July 11, 2014, did solicit, accept, or agree to accept any property, that is: food and/or beverages, except property the person is authorized by law to accept, with intent to control the performance of an act, that is: recommendation to award contract and/or continued business with ESG to the Vigo County School Board related to

the employment or function of a public servant, that is: Superintendent of Vigo County School Corporation;

COUNT III: DANIEL TANOOS, on or about August 10, 2014, did solicit, accept, or agree to accept any property, that is: tickets and/or beverages, except property the person is authorized by law to accept, with intent to control the performance of an act, that is: recommendation to award contract and/or continued business with ESG to the Vigo County School Board, related to the employment or function of a public servant, that is: Superintendent of Vigo County School Corporation[.]

*Id.* at 17-18.

[9] On October 22, 2018, Tanoos filed a motion to dismiss, seeking dismissal of all three charges on several grounds, the following of which is relevant to this appeal: The facts stated in the charging information do not constitute the offense of bribery because "Indiana does not recognize a 'generalized bribe' theory . . . and the State is required to prove the existence of an explicit quid pro quo", and here, the charging information's allegation that Tanoos would recommend to VCSC to award a contract or continue business with ESG was too general and, thus, insufficient.[2] He maintained that the State was required to show "that any of these solicitations, acceptances, or agreements to accept food/beverages/tickets were [] made on a quid pro quo basis, i.e., in exchange

---

[2] The other two bases for dismissal, the denial of which Tanoos does not challenge on appeal, were (1) lack of personal and subject matter jurisdiction; and (2) because the charging information alleged three separate *actus reus* for bribery, i.e., Tanoos "did solicit, accept, or agree to accept" property, the information lacks specificity to enable the court and jury to understand the issues and apprise Tanoos of the charges against him. *Appellant's Appendix Vol. II* at 53.

for Tanoos'[s] agreement or promise to recommend ESG for any particular project." *Id*. at 60.

[10] The Indiana Association of Public School Superintendents (The Association) requested and received permission to file an amicus curiae brief in support of Tanoos. The Association stated that it was not suggesting that school vendors' "extensions of goodwill and thanks in the form of meals, events, and tickets" should be allowed to cloud the judgment of school leaders, but it is "necessary and unavoidable for superintendents to interact with past, current, and future business associates," and the charges against Tanoos "have created uncertainty as to how the Indiana bribery statute can and will be enforced in the future." *Id*. at 87. The Association explained:

> Under the State's reading of the Indiana bribery statute, prosecutors could allege violations of the statute when superintendents and other public officials accept anything, at any time, from any person or business that has, is, or may do business with the public official. Public officials around the state would have no guidance as to where the line is drawn and legitimate and essential business and public-relation relationships would be chilled. School systems, municipalities and other public programs would suffer. Businesses could reconsider investments in Indiana. And it is not difficult to imagine the unfair and selective prosecution of public officials that could result if the State's current application of the statute is permitted.

*Id*. at 87-88. The Association urged that the State's application of the bribery statute "to the facts alleged here" violates federal and state due process and encourages arbitrary and discriminatory enforcement. *Id*. at 89.

[11]     The State's response to Tanoos's motion to dismiss argued, as is relevant to this appeal, that, first, for purposes of a motion to dismiss, the trial court must take the facts in the information and PCA as true and, second, the State is not required to include detailed factual allegations in the charging information. Rather, the State must allege the elements of the crime such that a defendant is given sufficient notice of the nature of the charges so he may anticipate proof and prepare a defense. The State maintained that the PCA outlined "a course of conduct by [Tanoos], as a public official, with Tischbein, an ESG employee and vendor doing business with VCSC, in which [Tanoos] requests dinner, tickets, donations, favors and then he recommends to the VCSC school board that ESG should be awarded a contract/business and the Board always follows his recommendations." *Id*. at 106-07. The State argued that it had met its burden to allege sufficient facts in the information and PCA to constitute bribery and the charges were not, as Tanoos claimed, based on a "generalized bribe" theory.

[12]     Pertaining to Count I, which alleged that Tanoos solicited, accepted, or agreed to accept food and/or beverages on August 24, 2013, the PCA stated that on August 16, 2013, Tischbein emailed Tanoos asking him if he knew the superintendent of Clay County Schools, stating that he had heard Clay County was looking to do an energy project and ESG wanted a shot at it. Tanoos replied,

Yes, I know her. She has called me on several occasions about issues. Do you have preseason tickets? The Browns are in Indy next week.

*Id.* at 31. Tischbein replied that ESG had four tickets "and they are yours, pls confirm[,]" and Tanoos said, "That would be perfect." *Id.* The Indianapolis Colts played the Cleveland Browns on August 24, and Tischbein's expense report indicates that ESG paid $364.65 for a dinner at Mo's Steakhouse in downtown Indianapolis that night. Tischbein did not attend the dinner, which was attended by Tanoos, his wife, son, and four other family members or friends. According to the State, this dinner occurred in the middle of ESG pursuing new contracts for VCSC projects, particularly a $4 million project at Hoosier Prairie Elementary School (HP). At a February 2014 school board meeting, Tanoos recommended approval to hire ESG for the HP project, and in March 2014, ESG and VCSC entered into the Phase 8 contract for $4 million, which included the HP project.

[13]   As to Count II, which alleged that Tanoos solicited, accepted, or agreed to accept food and/or beverages on July 11, 2014, the PCA stated that on July 6, 2014, Tanoos forwarded Tischbein an email that Tanoos had received from one of ESG's competitors, saying "FYI." *Id.* at 34. The next day, Tischbein replied saying "Thanks" and also inquiring whether Tanoos would be available for lunch that Friday. Tanoos replied that he would be at a principals' conference in Nashville, Tennessee with school board members and administrators, along with that same competitor whom Tanoos had just apprised Tischbein about.

Tischbein emailed back on July 7 asking if he should come to Nashville and buy dinner. Several hours later Tischbein emailed Tanoos to inquire if the Board wanted an update on HP and offered a walk-through to show the Board the progress. Thereafter, the two exchanged one or more emails in which Tischbein asked how the walk-through at HP went and then told Tanoos that he would be unable to make it to dinner Friday in Nashville. Tanoos responded about dinner, "No problem. Do you want to buy dinner like you did in Houston?" *Id*. at 35. On July 8, Tischbein replied, "For you, absolutely." *Id*. at 36. On July 11, Tischbein charged $1116.80 on his personal credit card to a restaurant in Nashville for the dinner, which he did not attend, and he did not request reimbursement from ESG.

[14] As to Count III, which alleged that Tanoos solicited, accepted, or agreed to accept tickets and/or beverages on August 10, 2014, the PCA reflects that, in January 2014, Tanoos reached out by email to Tischbein about a music concert of the band REO Speedwagon that would be performing at Klipsch Music Center on August 10, 2014, saying "This is the one!!!!" *Id.* at 37. On July 14, 2014, Tischbein emailed Tanoos and told him that the concert tickets had been purchased and a limousine would be transporting Tanoos and guests. Tischbein's expense report indicated that he expensed $75 at Klipsch on the day of the concert, and the day prior he expensed $63.08 at Payless Liquors. Tischbein's expense report indicated that he attended the concert with Tanoos, Tanoos's wife, and a school board member and spouse. The Phase 8 contract ended in September 2014.

[15]     The trial court held a hearing at which counsel for the parties presented argument. Tanoos maintained that the trial court should dismiss the charges because the allegation that, in exchange for receipt of food and concert tickets (provided by Tischbein/ESG), Tanoos, as a public servant, would make a favorable recommendation to the school board about ESG was a "generalized recommendation for future business", which does not constitute bribery under Indiana law. *Transcript* at 5. In support, Tanoos noted that, for the three dates identified in the charges, there was no pending contract before the school board and no open bidding for upcoming projects.

[16]     The Association as amicus urged that superintendents and administrators frequently interact with vendors and contractors and many of those interactions occur over a meal or the like, and Indiana law does not preclude the vendor from paying for the meal. Counsel argued that, in this case, "we're talking about two meals and a concert . . . [a]ll just to build a good rapport in exchange for no promise or agreement" but "[u]nder the wide sweep of the State's reading of the bribery statute [], public officials could be . . . subject to prosecution for the most basic and the most necessary interactions." *Id*. at 14. The Association maintained that there must be "an agreement on the part of the public official to perform some act in the future." *Id*. at 15.

[17]     The State argued that in this case Tanoos's recommendation to the school board is the specific act that would lead to the contract between ESG and VCSC. The State said the PCA taken as a whole illustrated that, over the years, Tanoos never recommended any other energy saving vendor other than ESG

and the school board always approved Tanoos's recommendations. Specifically, between 2000 and 2016, ESG entered into nine contracts, or phases, with VCSC for a total of $42 million, and Tischbein had been responsible for the VCSC account since as early as 2003. The State maintained that this was not a situation where Tanoos accepted gifts in exchange for a vague possibility that he might act on ESG's behalf sometime in the future, as Tanoos claimed, but rather Tanoos solicited dinners, tickets, and other items as set forth in the PCA in exchange for his willingness to continue recommending ESG – and only ESG – for VCSC's ongoing projects.

[18] On March 26, 2018, the trial court issued Findings of Fact and Conclusions of Law denying Tanoos's motion to dismiss. Its findings and conclusions included:

Findings of Fact

2) In each of the bribery counts the State alleges that [Tanoos], a public servant, solicited, accepted, or agreed to accept property, that he was not authorized by law to accept, to control the performance of an act related to his function as a public servant on three (3) separate occasions.

3) The Probable Cause Affidavit sets forth a course of conduct whereby [Tanoos] . . . through [Tischbein], an ESG employee and vendor doing business with [VCSC], requests dinner, tickets, donations and favors of value from ESG. [Tanoos], in his position as Superintendent, makes a recommendation to the VCSC School Board to award a contract/business to ESG. The VCSC School Board historically followed the recommendation of the defendant.

5) . . . While receiving benefits from ESG through Tischbein, [Tanoos] repeatedly recommended ESG[,] and the VCSC School Board repeatedly followed his recommendation.

## Conclusions of Law

1) As the moving party on the Motion to Dismiss, [Tanoos] bears the burden of showing as a matter of law that the Charging Information and Probable Cause Affidavit have insufficiently pled the crimes alleged and do not state an offense.

* * *

8) [Tanoos] next argues that Counts I-III should be dismissed because the charging information does not state facts that constitute a criminal offense pursuant to Indiana Code § 35-34-1-4-(a)(5). In [his motion to dismiss] brief, [Tanoos] argued that the State must plead a *quid pro quo* and that the facts in the probable cause affidavit and information do not constitute a criminal offense[.]

9) In his brief, [Tanoos] argued that the State has charged the defendant with a "generalized bribe" theory which is not supported under Indiana law. "An essential element of the offense of bribery is a *quid pro quo*." *Winn v. State*, 722 N.E.2d 345, 347 (Ind. Ct. App. 1999), citing *Wurster v. State*, 708 N.E.2d 587, 594 (Ind. Ct. App. 1999), *affd by* (1999) Ind., 715 N.E.2d 341, *r'hrg denied*. [Tanoos] further argued that the United States Supreme Court held in *McDonnell* that bribery statutes must not be read so broadly that "nearly anything a public official accepts - from a campaign contribution to lunch - counts as a *quid*; and nearly anything a public official does - from arranging a meeting

to inviting a guest to an event - counts as a *quo*." *McDonnell v. U.S.* 136 S.Ct. 2355, 2372 (2016) (citation omitted).

10) The State countered that it has met the requirements of Indiana Code § 35-34-1-2 by alleging facts sufficient in the probable cause affidavit and that each count of bribery tracked the language of the statute, including additional factual allegations.

11) . . . The information in this cause alleges a specific date for each count, and the probable cause affidavit contains the email communication content, dates and times to support the date and criminal conduct. In addition, the State has alleged a specific act, the defendant's recommendation to award contract and/or continued business with ESG.

12) A charging information must allege the elements of the crime such that the accused is given sufficient notice of the nature of the charges against him so that he may anticipate the proof and prepare a defense in advance of trial. See Ind. Const. Art. 1, § 13; Ind. Code § 35-34-1-2; *Smith v. State*, 465 N.E.2d 702, 704 (Ind. 1984). The State is not required to include detailed factual allegations in the charging instrument, though it may choose to do so. *Richardson v. State*, 717 N.E.2d 32, 51 (Ind. 1999).

* * *

14) In Counts I, II, and III, the State tracks the language of the bribery statute under Indiana law. Additionally, the probable cause affidavit sets forth sufficient facts in support of each count to meet its burden under Indiana Code § 35-34-1-2.

* * *

17)  Indiana's bribery statute nor the case law require that a *quid pro quo* is an element that must be plead by the State in the Information, but it is a matter for the trier of fact to determine.

*Appellant's Appendix Vol. II* at 164-69.  After the trial court denied his motion to dismiss, Tanoos sought and received certification of the trial court's order, and this court accepted his request for interlocutory appeal.  Additional facts will be provided as necessary.

## Discussion & Decision

[19]  Tanoos contends the trial court erred in denying his motion to dismiss.  Our standard of review is well settled.

> We review a trial court's denial of a motion to dismiss for an abuse of discretion.  An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. We may affirm a trial court's judgment if it is sustainable on any basis in the record.

*Gilliland v. State*, 979 N.E.2d 1049, 1057-58 (Ind. Ct. App. 2012) (quoting *Estrada v. State*, 969 N.E.2d 1032, 1038 (Ind. Ct. App. 2012), *trans. denied*). "Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss."  *Id*. at 1058 (quoting *Delagrange v. State*, 951 N.E.2d 593, 594-95 (Ind. Ct. App. 2011), *trans. denied*).

[20]  The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense.  *Id*. at

1060. The State is not required to include detailed factual allegations in a charging information. *Id*. As Tanoos acknowledges, to assess whether facts stated in a charging instrument constitute an offense, all the facts within the information and PCA are examined and taken as true. *Id.* at 1058.

[21] The offense of bribery as charged in this case is governed by I.C. § 35-44-1-2(a)(2), which states:

> (a) A person who:
>
> (2) being a public servant, solicits, accepts, or agrees to accept, either before or after the person becomes appointed, elected, or qualified, any property, except property the person is authorized by law to accept, with the intent to control the performance of an act related to the person's employment or function as a public servant;
>
> commits bribery, as Level 5 felony.

[22] Tanoos asserts that his motion to dismiss should have been granted because the facts alleged do not constitute the offense of bribery. Specifically, his claim is that "the State charged Tanoos under a generalized bribery theory which is prohibited under Indiana law." [3] *Appellant's Brief* at 8. In support, Tanoos cites to, among other cases, *Wurster v. State*, 708 N.E.2d 587 (Ind. Ct. App. 1999),

---

[3] Tanoos acknowledges that a quid pro quo "is not required to be laid out in the charging information," but it "is required to be supported by the facts in the [PCA]", and, he argues, that the PCA here fails to identify any such quid pro quo. *Appellant's Brief* at 11.

*summarily aff'd in part by* 715 N.E.2d 341 (Ind. 1999). In that case, the State

charged Indiana Representative Turpin and other individuals with bribery,

alleging as follows:

> From June, 1993 through May, 1996, in Marion County,
> Indiana, Samuel R. Turpin, being a public servant, that is: an
> elected member of the House of Representatives, did accept
> property, that is: money, from American Consulting Engineers,
> Inc., by and through its agents, James A. Wurster and Willis R.
> Conner, with the intent that such money would control the
> performance of acts related to Samuel R. Turpin's employment
> or function as a public servant, that is: with the intent that *Samuel
> R. Turpin would act to support or promote legislative measures and
> decisions that would result in economic gain to American Consulting
> Engineers, Inc*.

*Id*. at 593 (emphasis added). The defendants moved to dismiss the charges,

which the trial court denied. On appeal, Turpin, and other defendants,

challenged the sufficiency of the bribery charges, asserting that a specific quid

pro quo is an element of the offense of bribery and must be alleged in an

indictment and that acting "to support or promote legislative measures that

would result in economic gain" as stated in the charging instrument was

insufficient. *Id*. The *Wurster* court agreed and found that "the State's entire

case was based on the so-called 'generalized bribe' theory" and

> [w]ithout a specific description of how Turpin would "act" or
> what "act" he is alleged to have engaged in that resulted in, or
> was designed to result in, economic gain to [American
> Consulting Engineers], the defendants have no way to anticipate
> the evidence that may be presented against them, nor are they
> able to marshal evidence in their defense. It is neither fair nor

reasonable to have the defendants speculate, at their peril, as to the particular activity they may or may not have engaged in.

In addition, the offense charged must be described with sufficient particularity to permit the defense of double jeopardy in the event of a subsequent prosecution.

*Id.* at 596. The *Wurster* court determined that the indictments did not enable the defendants "to anticipate the proof of the State's case" and did not "protect the defendants from future prosecutions under the same or similar facts", and it reversed the trial court's denial of the defendants' motions to dismiss. *Id.* at 596. Our Supreme Court summarily affirmed the Court of Appeals' dismissal of the indictments. *Wurster v. State*, 715 N.E.2d 341, 343 (Ind. 1999).

[23] Tanoos urges that *McDonnell v. U.S.*, 136 S. Ct. 2355 (2016), also supports his position. In that case, the Governor of Virginia and his wife were indicted on federal bribery charges related to their acceptance of $175,000 in loans, gifts, and other benefits from a Virginia businessman, Jonnie Williams, who was the CEO of a company that had developed a nutritional supplement, which Williams wanted Virginia's public universities to research and study. To convict the McDonnells, the Government was required to show that Governor McDonell committed or agreed to commit an "official act" in exchange for the loans and gifts.[4] The Government argued that the Governor committed a

---

[4] The federal bribery statute addressed in *McDonnell*, states, in part, that a public official who "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any

number of "official acts" including arranging meetings, hosting events, and contacting government officials about research studies. At the jury trial, the McDonnells requested an instruction that merely arranging a meeting, attending an event, or hosting a reception are not "official acts," but the district court rejected the instruction. The jury convicted the McDonnells, and the Fourth Circuit affirmed Governor McDonnell's conviction.

[24] On appeal, the Court examined the federal bribery statute, 18 U.S.C.A. § 201, which Tanoos maintains is similar to Indiana's, and adopted a "more bounded interpretation of 'official acts'" than that sought by the Government, holding that an "official act" – defined in the statute as a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official – did not include "merely setting up a meeting, hosting an event, or calling another official." 136 S.Ct. at 2358-59. A jury must be able "to determine whether the public official agreed to perform an 'official act' at the time of the quid pro quo." *Id*. at 2371. The term "official act" must be "defined with sufficient definiteness that ordinary people can understand what conduct is prohibited," and "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id*. at 2373. The

---

*official act* . . . shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States." 18 U.S.C.A. § 201(b)(2)(A) (emphasis added). The statute defines "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit. 18 U.S.C.A. § 201(a)(3).

*McDonnell* Court concluded that the jury instructions that were given were "significantly overinclusive" as they failed to explain to the jury how to identify the pertinent "question, matter, suit, cause proceeding, or controversy" and inform the jury that such "question, matter, suit, cause proceeding, or controversy" must be focused and specific – and, consequently, the jury could have thought that a typical meeting, call, or event satisfied the definition or convicted Governor McDonnell for "something as nebulous as Virginia economic development." *Id*. at 2360. The Court vacated Governor McDonnell's convictions.

[25] Relying on those cases, Tanoos argues that (1) the *McDonnell* framework explaining "official act" supports his assertion that specificity in identification of what act he allegedly performed or agreed to perform is required and that influencing the VCSC school board "is exactly the type of nebulous, non-specific act" that *McDonnell* said does not constitute bribery, and (2) as in *Wurster*, none of the counts against Tanoos "identify a specific action Tanoos took; rather, each relies on a general notion that Tanoos would support continued business with ESG." *Appellant's Brief* at 8, 10. We are unpersuaded, however, that dismissal of the charges is warranted. While *McDonnell* may be relevant to the discussion, it does not govern our decision, as it concerned interpretation of the federal bribery statute's definition of "official act" in the context of jury instructions. Its context is wholly distinct from that before us.

[26] As to *Wurster*, we find it distinguishable. First, the charging information against Tanoos identifies three specific dates of the alleged bribes, whereas the *Wurster*

indictment spanned a three-year time period. Second, the *Wurster* indictment asserted that the State Representative would support or promote unspecified legislative measures at some future unspecified time, whereas, here, the PCA identified specific ongoing and upcoming future contracts for VCSC school renovations, as well as a consistent pattern of ESG being the only GESC that Tanoos recommended and the only contractor that was awarded the contracts over the course of at least ten years. Thus, contrary to Tanoos's claim, the PCA and the charging information identify a quid pro quo sufficient that Tanoos can anticipate the evidence that may be presented against him and marshal evidence in his defense.

[27] More specifically, Count I was a Mo's Steakhouse meal on August 24, 2013 that Tanoos allegedly solicited and accepted days after Tischbein had raised the issue of the HP project with Tanoos. The PCA includes email correspondence showing that, the next month, Tischbein provided additional Colts game tickets and in October 2013, Tischbein corresponded with Tanoos asking "When would be a good time to talk about HP?" *Appellant's Appendix Vol. II* at 33. The solicitation for the tickets and meal occurred as the school board was considering the HP project, which was awarded to ESG in March 2014.

[28] Count II alleges the payment of restaurant charges and Count III alleges the payment of concert tickets and expenses. The PCA alleges that Tanoos solicited the concert tickets in January 2014, a few months before the $4 million Phase 8 contract that included HP was awarded to ESG in March 2014. On July 6, 2014, and while HP project was underway, Tanoos forwarded to

Tischbein an email that Tanoos had received from an ESG competitor, saying, "FYI." *Id*. at 34. Tanoos then emailed Tischbein and shared that he would be attending in July 2014 a conference in Nashville, along with said competitor. Tanoos then asked Tischbein on July 7 whether he would like to buy a dinner for Tanoos while he was in Nashville, Tennessee, and Tischbein ultimately personally paid for a $1116 meal on July 11 for Tanoos and others. Some days later, Tischbein advised that he had acquired the tickets for the REO Speedwagon August 2014 concert, which Tanoos, Tischbein and others attended at ESG's expense. In September 2014, the Phase 8 contract ended. The PCA reflects that communications and exchanges continued in 2015, and in December 2015, Tanoos made a motion at a school board meeting to approve a contract for ESG to provide guaranteed energy savings to VCSC, which motion passed, and in April 2016, the Board approved a $5 million Phase 9 contract for ESG to work on the planned projects.

[29] Tanoos suggests that "only when a formal Request for Qualifications was advertised, per the statute, for a project or phase would the possibility for ESG to gain business present itself," and, here, in each of the three instances of alleged bribery "ESG had no pending bids before the VCSC School Board." *Brief* at 6-7. However, we do not find that Indiana law precludes bribery only if negotiations of a pending contract are occurring.

[30] The State asserts, and we agree, that "Tanoos's arguments are not about legal deficiencies in the information," but rather "amount to an assertion that he will be able to convince a jury that the alleged bribes were actually innocent acts of

business development and there was no quid pro quo for these gifts." *Appellee's Brief* at 12. As stated, a motion to dismiss an information is not a proper vehicle for raising questions of fact to be decided at trial or facts constituting a defense. *See State v. Sturman*, 56 N.E.3d 1187, 1196 (Ind. Ct. App. 2016). The trial court properly denied Tanoos's motion to dismiss.

[31] Judgment affirmed.

Brown, J. and Tavitas, J., concur.